Argued and submitted April 11, appeal dismissed August 2, 2006

In the Matter of
Berkley Ross Conner, Jr.,
a Minor Child.

BERKLEY ROSS CONNER, JR.,
*Appellant.*

2005-819401; A130828

140 P3d 1167

Richard L. King argued the cause for appellant. With him on the brief was Warren Allen, LLP.

Before Armstrong, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

SCHUMAN, J.

## SCHUMAN, J.

Petitioner, a Jehovah's Witness, appeals from an order issued by the Multnomah County Juvenile Court authorizing the administration of transfusions using whole blood products despite petitioner's religious beliefs and the wishes of his parents. Petitioner asks this court to establish a common-law "mature minor" exception to the statute that allows a judge of the juvenile court to authorize emergency medical care. The exception would require the judge to defer to the wishes of a minor who demonstrates the capacity and maturity to make such decisions for himself or herself. We decline to decide the issue raised by petitioner, however, because he has since turned 18 years old, rendering the order—which authorizes treatment to "the above-named child"—moot. We therefore dismiss petitioner's appeal.

In November 2005, when petitioner was 17 years old, he learned that he had lymphoblastic leukemia. Dr. Stork, his treating physician at the Oregon Health & Science University's Doernbecher Hospital (OHSU), indicated upon diagnosis that, with chemotherapy, petitioner has a 75 percent chance of long-term survival. Stork also noted, however, that petitioner could require a blood transfusion in the future to prevent death or serious irreversible harm.

As Jehovah's Witnesses, petitioner and his father[1] have religious objections to receiving transfusions of whole blood products. Accordingly, petitioner's father signed a form provided to him by the hospital entitled "Transfusion Blood Refusal," on which he indicated that his son is "one of Jehovah's Witnesses and refuse[s] transfusion of whole blood or any of its primary components," although he would condone acceptance of all available "blood fractions or blood alternatives." Just above his signature on that form, petitioner's father crossed out the following preprinted paragraph:

"Refusal of Blood transfusion for a minor. As the parent/ guardian of a minor child I understand that the doctor(s)

---

[1] Petitioner's mother, while supportive of his faith and his decisions based thereon, is not a Jehovah's Witness.

treating my child will make every effort to respect my beliefs regarding the transfusion of blood products as indicated above. However I also recognize that my child's physicians have a legal obligation not to withhold therapy they think is necessary to keep my child alive or to keep him/her from serious harm or permanent injury or disability. I understand therefore that, if the treating physician believes transfusion, after evaluating alternative non-blood medical management, is necessary to save my child's life, or to prevent serious irreversible harm, my child may be transfused although every effort will be made to avoid this."

Below that crossed-out paragraph, father handwrote the following statement:

"Berkley Ross Conner Jr. is a mature minor. Will not condone blood transfusion but will accept [blood fractions and blood alternatives]. Berkley, at 4 months shy of 18 yrs is able to make his own decisions. This statement by parent /s/ Berkley Conner."

Eight days later, on November 22, 2005, Stork, along with other concurring physicians at OHSU, prepared a handwritten letter to the court requesting an *ex parte* order authorizing them "to be able to transfuse [petitioner] with blood products if necessary, in the future, to prevent death or serious irreversible harm." The court granted that order.

The following day, petitioner's parents requested and were afforded a hearing. Present at that hearing were petitioner's mother, father, and attorney; petitioner also testified by speaker phone. During the hearing, petitioner's attorney explained that "the only real issue here is [petitioner's] capacity to make [health care] decisions under the law." Petitioner's attorney submitted to the court several cases from other jurisdictions that had applied the common-law "mature minor" doctrine in cases similar to petitioner's. He also stated, almost parenthetically and with no supporting argument, that "the matter of due process, equal protection, and fundamental fairness would demand that a child that's that close to being 18 should have an opportunity to be heard." The court heard testimony from petitioner's father, mother, and from petitioner himself, primarily regarding his capacity to make health care decisions concerning blood

transfusions and the sincerity of his faith. Specifically, petitioner and his parents testified that he is a senior in high school, he has a 3.5 grade point average, he is interested in chemistry and physics, he has spoken at length to the doctors regarding his diagnosis, and he fully understands the nature of his disease and the consequences of refusing a blood transfusion. They further explained that petitioner refused the blood products explicitly on religious grounds that he has held since age 10 and that he himself had chosen to be baptized in the church the previous summer.

The juvenile court declined to create and apply an Oregon version of the mature minor doctrine, noting that its "obligation is to enforce the laws of this state, and the law in this state is that somebody under the age of 18 is a minor and therefore does not have the legal capacity to make this kind of a medical decision." The court then issued an order stating: "This Court's 11/22/05 order authorizing transfusions if deemed necessary by the attending physicians to prevent death or serious irreversible harm is hereby continued."

On appeal, petitioner makes a variety of legal arguments supporting his contention that a mature minor exception should be applied in the present case. He explains that the legislature has long afforded minors the ability to make health care decisions on certain issues, such as treatment of venereal disease, ORS 109.610; testing and treatment of HIV, ORS 433.045 ("[a]n HIV test shall be considered diagnosis of venereal disease for purposes of ORS 109.640"); sterilization, ORS 436.205(2) and ORS 436.225; and abortion, ORS 109.640 and OAR 413-040-0430(2). He points out that other jurisdictions have allowed mature minors to make health care decisions, including refusal of treatment. *See In re E.G.*, 133 Ill 2d 98, 549 NE2d 322 (1989) (17-year-old Jevohah's Witness with leukemia allowed to make decision regarding refusal of blood transfusion as a mature minor even though the age of majority in Illinois is 18); *In re Swan*, 569 A2d 1202 (1990) (minor's stated desire not to remain on life support adhered to); *In re Rena*, 46 Mass App Ct 335, 337, 705 NE2d 1155, 1157 (1999) ("[I]t is appropriate for a judge to consider the maturity of the child to make an informed choice."). Petitioner argues that the federal and state constitutions provide protections not only for adults, but also for

minors, ensuring them free exercise of religion and substantive due process. He notes in particular that the Supreme Court has deemed unconstitutional a flat ban on abortions for minors, requiring instead individualized hearings. *See Planned Parenthood of Missouri v. Danforth,* 428 US 52, 74, 96 S Ct 2831, 49 L Ed 2d 788 (1976) ("Minors, as well as adults, are protected by the Constitution and possess constitutional rights."); *Bellotti v. Baird,* 443 US 622, 633, 99 S Ct 3035, 61 L Ed 2d 797 (1979) ("A child, merely on account of his minority, is not beyond the protection of the Constitution.").

■    Although petitioner raises complex and interesting issues, we do not have occasion to consider them in the present case. In issuing the order from which petitioner appeals, the juvenile court relied solely on ORS 419B.110, which provides:

> "Whether or not a petition has been filed, if a *child* requires emergency medical care, including surgery, and no parent is available or willing to consent to the care, a judge of the juvenile court may authorize the care. The judge may thereafter direct the filing of a new petition."

(Emphasis added.) The order itself states that petitioner was born on March 3, 1988, and it authorizes petitioner's physician "to retain physical custody of the above-named *child* for purposes of providing and consenting to all necessary medical treatment to preserve this child's health and life." (Emphasis added.) A "child" for purposes of juvenile court jurisdiction is "a person who is under 18 years of age." ORS 419B.100(1). Thus, regardless of whether the order was valid when issued, its force and effect ended on March 3, 2006, petitioner's eighteenth birthday. Thereafter, the juvenile court had no jurisdiction over him. Any opinion we could render on the validity of its order would have no practical effect on the rights of any party; it would be purely advisory. The case is therefore moot. *Brumnett v. PSRB,* 315 Or 402, 405, 848 P2d 1194 (1993).

In explaining why he is appealing from the order despite having reached his eighteenth birthday, petitioner cites ORS 419B.328(2)(e). That statute provides, in part:

"(1) The court shall make a child found to be within the jurisdiction of the court as provided in ORS 419B.100 a ward of the court.

"(2) The court's wardship continues, and the ward is subject to the court's jurisdiction, until one of the following occurs:

"* * * * *

"(e) *The ward becomes 21 years of age.*"

ORS 419B.328 (emphasis added). That statute, however, does not apply to petitioner, for the following reasons.

■    Although the juvenile court's authority generally extends only to cases "involving a person who is under 18 years of age," ORS 419B.100, the statute quoted above creates an exception and extends the authority to persons between the ages of 18 and 21—but only if the person is a ward of the court found to be within the jurisdiction of the court *"as provided in ORS 419B.100."* ORS 419B.328(1) (emphasis added). In the present case, the juvenile court has made no such finding. To the extent that the court found petitioner to be within its jurisdiction, it did so pursuant to ORS 419B.110, not "as provided in ORS 419B.100." The juvenile court's initial *ex parte* order authorizing emergency medical care, dated November 22, 2005, recites that it is issued "[p]ursuant to ORS 419B.110." Indeed, ORS 419B.100 was not available to the court even if it had sought to rely on it. The state did not appear, and therefore did not meet its burden of establishing a basis for jurisdiction under ORS 419B.100. *See State ex rel Juv. Dept. v. Froats,* 117 Or App 467, 470, 844 P2d 917 (1992) (state must prove by a preponderance of the evidence that the allegations in a petition alleging the juvenile court's jurisdiction would sustain a finding of that court's jurisdiction). And although, under ORS 419B.809(1), a "person" other than the state "may file a petition in the juvenile court alleging that a child named therein is within the jurisdiction of the court under ORS 419B.100," neither Stork nor any other "person" did so; such a petition must contain specific information about the child, including, among other things, the child's name, age, and residence, the facts that bring the child within the jurisdiction of the court under ORS 419B.100, and the name and residence of the

child's parents. ORS 419B.809(4); *see also Froats*, 117 Or App at 470 ("In determining whether the juvenile court has properly found jurisdiction over a child, * * * we consider whether the allegations in *the petition*, if proved, would sustain a finding of jurisdiction * * *." (Emphasis added.)).

In sum, the court in this case derived its statutory authority to order medical care from ORS 419B.110, which confers such authority "[w]hether or not a petition has been filed." It did not invoke the authority of ORS 419B.100, nor did it make any findings that would justify such an invocation even if it had been attempted. Thus, although the court may have lawfully issued an order that applied to petitioner, it did not do so pursuant to ORS 419B.100. That being the case, petitioner was never found to be "within the jurisdiction of the court as provided in ORS 419B.100." ORS 419B.328(1). Thus, ORS 419B.328(2)(e) does not authorize the juvenile court to exercise continuing jurisdiction over petitioner, who is no longer a child. The court's order authorizing emergency medical care ceased to have any legal effect on petitioner's eighteenth birthday. The present appeal is therefore moot.

Appeal dismissed.