Argued and submitted May 9, on respondent's motion to dismiss filed April 18, and appellant's response to respondent's motion filed May 2, motion to dismiss denied, reversed and remanded August 17, 2016

In the Matter of L. P. L. O., a Child.
STATE OF OREGON,
*Respondent,*

*v.*

L. P. L. O.,
*Appellant.*

Multnomah County Circuit Court
15JU05049;
Petition Number 21912;
A161023

381 P3d 846

Merri Souther Wyatt, Judge.

Jennifer R. Stoller argued the cause and filed the briefs for appellant.

Cecil A. Reniche-Smith, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

**SHORR, J.**

In this juvenile dependency case, petitioner L. P. L. O. had petitioned the juvenile court to take dependency jurisdiction over him when he was 17 years old. The juvenile court refused to take jurisdiction and entered a judgment dismissing petitioner's petition. After entry of that judgment, but before filing his appeal, petitioner turned 18 years old. On appeal, petitioner argues that the juvenile court could not decline to take jurisdiction over him because, based on the court's findings, he was within the court's dependency jurisdiction as a matter of law. The state does not dispute the merits of petitioner's appeal. Instead, the state argues that we should not reach the merits because (1) the appeal is moot now that petitioner has turned 18 years old and (2) we and the juvenile court lack subject matter jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), ORS 109.701 to 109.834. We conclude that petitioner's appeal is not moot, there is subject matter jurisdiction under the UCCJEA, and petitioner is within the court's dependency jurisdiction. Accordingly, we deny the state's motion to dismiss and reverse and remand for the juvenile court to take jurisdiction over petitioner and for further proceedings.

The facts are not in dispute. At the time he filed his petition, petitioner was in federal custody in Oregon. Petitioner was born in El Salvador, where he lived with his father until he fled in 2013. Petitioner's mother died in 2006. Petitioner's father would hit petitioner with a belt, cord, or rope, sometimes daily; petitioner believed his father's treatment of him would resume if he returned to El Salvador. Also, while in El Salvador, criminal gangs threatened to kill petitioner if he did not participate in "doing bad things to people," and he knew of other people who had been killed when they refused similar requests.

In August 2013, petitioner left El Salvador, making his way to the United States, where he was apprehended and placed in the custody of the federal Office of Refugee Resettlement (ORR). ORR allowed petitioner to live with his siblings in Massachusetts until April 2015. Petitioner's siblings never attained legal guardianship of petitioner.

Petitioner filed for dependency jurisdiction in August 2015, while he was 17 years old, after he had been placed in a facility in Oregon. Petitioner sought juvenile court jurisdiction so that he could qualify for federal special immigrant juvenile status, which requires a state juvenile court to declare the juvenile immigrant a dependent based on findings that the juvenile cannot be returned to his or her parents due to abuse, neglect, or abandonment. *See* 8 USC § 1101(a)(27)(J) (defining special immigrant juvenile status).

After petitioner filed his petition, the juvenile court referee held a preliminary hearing to determine if the court had jurisdiction under the UCCJEA, and concluded that it had temporary emergency jurisdiction under ORS 109.751(1). The referee found that "[t]his child is present in Oregon with no parents available to provide safe care for the child. Mother is deceased; father is in El Salvador. Child reports that he cannot safely return to El Salvador due to gang violence there." The referee then set a jurisdictional hearing date in October 2015.

Petitioner's father received proper notice of the jurisdictional hearing but did not appear. At the hearing, the evidence consisted of petitioner's testimony and an investigator's report that included confirmation from petitioner's sister that their father would hit petitioner with a belt. The state argued that the juvenile court did not have jurisdiction under the UCCJEA and, if it did have jurisdiction, that petitioner had not met his burden to prove a risk of harm from his father's alleged abuse.

After taking evidence, the juvenile court dismissed petitioner's petition. In the judgment dismissing the case, the juvenile court first determined that it had temporary emergency jurisdiction under the UCCJEA and that no other state had jurisdiction. It then found that the following paragraphs of the allegations in petitioner's petition were proven true:[1]

---

[1] The court also found that petitioner had proved allegation 2.A.viii. that "[t]he child is in deportation proceedings. The child faces a threat of harm if he is returned to El Salvador, and needs the assistance of the juvenile court to address this issue"; and allegation 2.B. that "[t]he child is dependent for care and support on a public or private child-caring agency that needs the services of the court in planning for the best interest of the child, namely, the Morrison Child and Family

"2.  \* \* \* \* \*

"A.  \* \* \* \* \*

"i.    The child's mother is deceased.

"ii.    The child's father repeatedly physically abused him throughout his childhood and until the child left El Salvador.

"iii.    The child ran away from the home of his father.

"iv.    The child has been threatened with physical harm by criminal gangs in El Salvador and is at risk of harm if he returns to El Salvador.

"v.    The child has no legal guardian in the United States.

"\* \* \* \* \*

"vii.    The child is currently in the physical custody of the U.S. Department of Health and Human Services, Office of Refugee Resettlement, which has been unable to identify any relatives with whom the child could live."

The court also found that petitioner was under 18 years old and had "left El Salvador in August 2013." The court concluded that "the petitioner failed to sustain his burden and his petition for jurisdiction is denied."

Petitioner timely appealed the court's decision, but, as noted, he appealed after he had turned 18 years old.

## MOTION TO DISMISS FOR MOOTNESS

As a preliminary matter, we must first address the state's motion to dismiss petitioner's appeal. The state argues that petitioner's appeal is moot because, now that petitioner

---

Services Senderos program, a placement of the Office of Refugee Resettlement, Division of Unaccompanied Children's Services." On appeal, petitioner states that no evidence was presented on those allegations at the jurisdictional hearing, and thus does not rely on them for his argument. As to allegation 2.A.viii., we take petitioner's statement to mean that no evidence was presented regarding petitioner being in deportation proceedings because petitioner did present evidence, and the court found, that petitioner was at risk of harm if returned to El Salvador.

has turned 18 years old, this appeal cannot afford him any practical relief. That is so, the state argues, because the juvenile court can take dependency jurisdiction only over a child who is under 18, ORS 419B.100. Thus, even if we were to reverse the juvenile court's decision, the state asserts that the juvenile court cannot now, on remand, enter a judgment taking jurisdiction over petitioner and making him a ward of the court because the juvenile court is without *authority* to do so. In making that argument, the state points to *In re Conner*, 207 Or App 223, 140 P3d 1167 (2006).

Petitioner responds that nothing in ORS 419B.100 prevents this court from directing a juvenile court to enter a jurisdictional judgment after a child appeals a denial of jurisdiction that was made before the child turned 18 years old. Petitioner urges us to apply the rule from delinquency cases—that a child's age is determined, for jurisdictional purposes, at the time proceedings are instituted—to dependency proceedings. Petitioner further argues that the juvenile court has continuing jurisdiction over this matter because he filed his petition when he was 17 years old, the jurisdictional hearing occurred when he was still 17 years old, and he timely appealed the court's dismissal of his petition.

We have not previously confronted the legal question raised by the state's motion to dismiss. "We analyze the scope of a statutory grant of jurisdiction in the same manner as we analyze other statutes." *McIntire v. Forbes*, 322 Or 426, 429, 909 P2d 846 (1996), *abrogated on other grounds by Kellas v. Dept. of Corrections*, 341 Or 471, 486, 145 P3d 139 (2006). Thus, in construing ORS 419B.100(1), "[w]e give primary weight to the text and context of the provision in light of any legislative history that may be appropriately considered." *Greenfield v. Multnomah County*, 259 Or App 687, 698, 317 P3d 274 (2013).

The juvenile dependency jurisdiction statute, ORS 419B.100(1), provides that, subject to two exceptions not at issue here, "the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and" meets one of the statutory criteria listed in

subsections (a) to (h).[2] There is no dispute that, when petitioner filed his petition, he was under 18, thus, it was a case involving a person who is under 18 years of age. Therefore, the question we must confront is whether a court having exclusive jurisdiction of an initiated dependency proceeding involving a 17 year old, nonetheless loses its authority to exercise that exclusive jurisdiction if the child turns 18 before a jurisdictional judgment is entered. The text of ORS 419B.100(1), alone, does not conclusively resolve that question.

Significantly, however, our case law has confirmed that a juvenile court does not so lose its authority in similar circumstances in juvenile delinquency matters based on identical statutory text, and those cases provide useful context for interpreting ORS 419B.100(1). *See Weber and Weber*, 337 Or 55, 67, 91 P3d 706 (2004) (recognizing that "this court presumes that the legislature enacts statutes in

---

[2] ORS 419B.100(1) provides:

"Except as otherwise provided in subsection (5) of this section and ORS 107.726, the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"(a) Who is beyond the control of the person's parents, guardian or other person having custody of the person;

"(b) Whose behavior is such as to endanger the welfare of the person or of others;

"(c) Whose condition or circumstances are such as to endanger the welfare of the person or of others;

"(d) Who is dependent for care and support on a public or private child-caring agency that needs the services of the court in planning for the best interest of the person;

"(e) Whose parents or any other person or persons having custody of the person have:

"(A) Abandoned the person;

"(B) Failed to provide the person with the care or education required by law;

"(C) Subjected the person to cruelty, depravity or unexplained physical injury; or

"(D) Failed to provide the person with the care, guidance and protection necessary for the physical, mental or emotional well-being of the person;

"(f) Who has run away from the home of the person;

"(g) Who has filed a petition for emancipation pursuant to ORS 419B.550 to 419B.558; or

"(h) Who is subject to an order entered under ORS 419C.411(7)(a)."

light of existing judicial decisions that have a direct bearing upon those statutes"); *State v. Biscotti*, 219 Or App 296, 302, 182 P3d 269 (2008) ("We ordinarily assume that the legislature is aware of other statutes *in pari materia* and case law interpreting them existing at the time of enactment.").

The juvenile delinquency jurisdiction statute, ORS 419C.005(1), provides:

> "Except as otherwise provided in ORS 137.707, *the juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and* who has committed an act that is a violation, or that if done by an adult would constitute a violation, of a law or ordinance of the United States or a state, county or city."

(Emphasis added.) The relevant jurisdictional wording is identical to that used in juvenile dependency matters under ORS 419B.100(1). Before the legislature split the dependency and delinquency statutes into separate statutory chapters in 1993, both dependency and delinquency jurisdiction was governed by *former* ORS 419.476 (1991), *repealed by* Or Laws 1993, ch 33, § 373. That version of the statute also contained the identical relevant text found in both the current versions of the dependency and delinquency jurisdiction statutes. *Former* ORS 419.476(1) (1991) provided that "[t]he juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and" meets one of the statutory criteria listed in subsections (a) to (g). That above-quoted text has remained unchanged since 1959, when *former* ORS 419.476 (1991) was first enacted. Or Laws 1959, ch 432, § 2 ("The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and ***.").

Under *former* ORS 419.476(1) (1991), and the identical text in ORS 419C.005(1), we have long held in delinquency cases that the youth's age for the purpose of the juvenile court's exclusive jurisdiction is measured at the point that judicial proceedings are initiated.[3] *See, e.g., Brown v.*

---

[3] The juvenile court's exclusive jurisdiction also attaches, per statute, when a youth or child is taken into protective custody. ORS 419B.157; ORS 419C.094. Petitioner does not assert that he was taken into protective custody as contemplated by the juvenile code.

*Zenon*, 133 Or App 291, 295, 891 P2d 666 (1995) (recognizing that "jurisdiction attaches when a child is taken into protective custody. ORS 419B.157; ORS 419C.094. If a child is not taken into protective custody, jurisdiction attaches when other steps are taken to initiate judicial proceedings."); *Delaney v. State of Oregon*, 58 Or App 442, 445, 648 P2d 1302 (1982) (recognizing, under *former* ORS 419.476 (1991), that "jurisdiction of the juvenile court does not depend on the defendant's age at the time the criminal act was committed, but his age at the time judicial proceedings were initiated"); *see also State v. Godines*, 236 Or App 404, 414, 236 P3d 824, *rev den*, 340 Or 480 (2010) (applying *Delaney* to ORS 419C.005(1)). That rule applies even though, at the point judicial proceedings are initiated, the jurisdictional allegations are only alleged and not yet adjudicated. *See* ORS 419C.250(1) (the state "may file a petition alleging that a youth is within the jurisdiction of the court as provided in ORS 419C.005"); ORS 419C.400 - 419C.420 (adjudication of facts alleged in the petition).

We also have held that an appeal of a juvenile court remand (now termed a waiver) to adult court does not become moot when a youth turns 18 during the pendency of the appeal, even though a wardship was not established, because the juvenile court's jurisdiction continues until a final action, as provided by the statute governing termination of a wardship, disposes of the case. *State v. Weidner*, 6 Or App 317, 321, 484 P2d 844 (1971); *see also State v. Thornton*, 41 Or App 469, 474, 599 P2d 1160 (1979) (holding circuit court properly dismissed indictment brought against youth after he turned 18 where juvenile court previously had denied a remand to circuit court and dismissed the juvenile petition against youth based on the same conduct because, once jurisdiction attaches, "[t]hat jurisdiction is exclusive and does not evaporate merely because the juvenile turns 18 after judicial proceedings against him have been initiated").

We discern no statutory basis for the authority of a juvenile court to exercise its exclusive jurisdiction in a dependency matter to be more limited than its authority in a delinquency matter based on identical statutory text. We particularly fail to discern a meaningful distinction between

the two statutes because the identical text in both statutes is derived from *former* ORS 419.476 (1991), on which our case law is based. In splitting the dependency and delinquency codes, the legislature did not make any changes to that text that would evince a legislative intention to treat the identical text in those two statutes differently from each other, or differently from the case law previously applying it.

In arguing for a different reading of ORS 419B.100(1) based on our case law, the state contends that *Conner* stands for the proposition that, if a juvenile court does not establish a wardship over the child before the child turns 18, then a wardship can never be established "as provided in ORS 419B.100." ORS 419B.328(1) ("The court shall make a child found to be within the jurisdiction of the court as provided in ORS 419B.100 a ward of the court."). However, *Conner* held only that emergency medical care orders under ORS 419B.110 cease to have legal effect when a child turns 18 because a wardship over a child that lasts until the child is 21 cannot be created through ORS 419B.110—a child can be a ward only if the child is found to be within the court's jurisdiction as provided in ORS 419B.100. Because the child in that case turned 18 during the appeal of the medical care order under ORS 419B.110, we held that the order no longer had legal effect and the appeal was thus moot. *In re Conner*, 207 Or App at 229-30. In contrast, here, petitioner did seek to have the court establish a wardship "as provided in ORS 419B.100" before he turned 18 years old; thus, *Conner* is not helpful to our inquiry.

Further, the text of ORS 419B.100(1) suggests that the juvenile delinquency cases state the correct rule for dependency cases as well. Under ORS 419B.100(1), a juvenile court has exclusive jurisdiction "in any case involving a person who is under 18 years of age." The use of the wording "in any case" indicates that the legislature intended that the juvenile court's exclusive original jurisdiction would attach at the time proceedings that involve a person under 18 years of age are initiated, because that is the point in time at which "any case involving a person who is under 18 years of age" becomes a "case." In contrast to ORS 419B.100(1), which provides when a juvenile court's exclusive jurisdiction

*first* attaches to *any case*, other statutes in the dependency code provide that the court obtains jurisdiction *over the child* once the child is made a ward of the court. *See, e.g.*, ORS 419B.328(1) ("The court shall make a child found to be within the jurisdiction of the court as provided in ORS 419B.100 a ward of the court."). *See also Dept. of Human Services v. M. J. H.*, 278 Or App 607, 612, 375 P3d 579 (2016) ("Although that section provides that the juvenile court has jurisdiction 'in any case,' we have emphasized that the juvenile dependency code contemplates that a juvenile court takes jurisdiction 'over a child' because, *once jurisdiction is established*, the child becomes a ward of the court and the court must decide who will have legal custody of the child * * *." (Emphasis added.)). In that way, the legislature ensured that the court's exclusive jurisdiction attaches as soon as *a case* involving a person under 18 years old is initiated, and continues until the case is disposed of as provided by statute, even if, at the later hearing, the jurisdictional allegations are not proved such that the court cannot take jurisdiction *over the child*. That outcome is further supported by ORS 419B.328, which provides that, once jurisdiction is established, the child becomes a ward of the court and the wardship may continue until the ward turns 21 years old. Although petitioner has now turned 18, there is nothing in the text of ORS 419B.100(1) that suggests that the juvenile court lost its authority to enter a jurisdictional judgment in petitioner's ongoing case that was properly initiated when he was a 17-year-old child.

Likewise, nothing about the adjudication of jurisdictional facts in dependency matters suggests a different result. Like in delinquency, a dependency petition must set forth the jurisdictional allegations that place a child within the court's jurisdiction, but those allegations are adjudicated at a later hearing. *See* ORS 419B.809 (petition contents); ORS 419B.305 - 419B.310 (hearing on jurisdictional allegations). Nonetheless, the court's exclusive jurisdiction must attach at the initiation of proceedings so the court can adjudicate those allegations (and obtain personal jurisdiction over the necessary parties to a dependency proceeding). By providing for the court's exclusive jurisdiction over "any case," the legislature ensured that the court could exercise that

jurisdiction in the ongoing case once initiated. At the later hearing, the only allegations that are required to be "current" under our case law are those allegations that relate to the risk of harm to the child. *See Dept. of Human Services v. M. A. H.*, 272 Or App 75, 84, 354 P3d 738 (2015) ("For a court to take jurisdiction of a child under ORS 419B.100(1)(c), the child's 'condition or circumstances' *at the time of the jurisdictional hearing* must be such as to endanger the welfare of the child or another person." (Emphasis in original.)). There is nothing in the statutory text or our case law that suggests or implies that the child must remain under 18 years of age for the court to have authority to enter the jurisdictional judgment. Moreover, in this case, petitioner was under 18 years of age at the time of the adjudication of the jurisdictional allegations in his petition.

We also cannot find any evidence of a legislative intention that the presence or absence of jurisdiction in dependency matters depends on the juvenile court initially reaching a correct legal decision. To the contrary, the legislature has declared a policy of liberal construction of the dependency code so that children coming within the jurisdiction of the court "may receive such care, guidance, treatment and control as will lead to the child's welfare and the protection of the community." ORS 419B.090(2)(c). Under the state's construction of the statute, if the juvenile court had taken jurisdiction of petitioner at the jurisdictional hearing, when petitioner was still 17 years old, then petitioner could be a ward of the court under ORS 419B.328(e) until he turned 21 years old. Under that scenario, any of the parties to the matter could have obtained appellate review, without fear of a motion to dismiss for mootness based on petitioner's age, because the court's wardship could continue until petitioner turned 21. However, where, as here, a juvenile court incorrectly concludes that there was no jurisdiction before the child turns 18 years old, and a timely appeal is filed after the child turns 18 years old, the state contends that there could never be jurisdiction over the child, even if the appeal would be successful and the child might then be a ward of the court until age 21. That is, under the state's scenario, the newly turned 18 year old has no redress when a juvenile court incorrectly refuses to protect him until he

turns 21. We do not find support in the statute, or the legislative history, for such an anomalous basis for jurisdiction—that is, where jurisdiction depends on the juvenile court initially reaching the correct result.

Based on all of the foregoing, we conclude that a juvenile court's exclusive jurisdiction over a dependency case involving a person who is under 18 years of age attaches at the initiation of proceedings and is not thereafter lost merely because the child turns 18 years old before a wardship is established. When petitioner turned 18, the juvenile court did not lose its authority to continue to exercise its *exclusive* jurisdiction over petitioner's petition, which, when initiated, involved a person who was under 18 years old. Because the juvenile court can take jurisdiction over petitioner, as provided in ORS 419B.100, which makes it possible for petitioner to be a ward of the court until he turns 21 years old, ORS 419B.328, this appeal can provide petitioner with effective relief. Accordingly, we conclude that petitioner's appeal is not moot, and we deny the state's motion to dismiss.

## SUBJECT MATTER JURISDICTION
## UNDER THE UCCJEA

On appeal, the state also asserts that we cannot reach the merits of petitioner's arguments because both we and the juvenile court lack subject matter jurisdiction under the UCCJEA to entertain petitioner's petition. Petitioner responds that the juvenile court correctly concluded that it had temporary emergency jurisdiction under the UCCJEA, ORS 109.751(1). We review matters of jurisdiction for errors of law, *Campbell v. Tardio*, 261 Or App 78, 80, 323 P3d 317 (2014), and conclude that the court had temporary emergency jurisdiction under the UCCJEA to protect petitioner.

The UCCJEA applies to dependency proceedings in Oregon. ORS 419B.803(2). As provided in ORS 109.751(1), "[o]ne purpose of the UCCJEA is to grant Oregon temporary emergency jurisdiction to protect a child in this state." *Dept. of Human Services v. G. G.*, 234 Or App 652, 656, 229 P3d 621 (2010). That statute provides that an Oregon court "has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is

necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." ORS 109.751(1).

The state argues that the juvenile court did not have temporary emergency jurisdiction under ORS 109.751(1) because petitioner was not "abandoned"—he left El Salvador of his own accord and is in federal custody—and the court was under no emergency to protect petitioner. The state argues that, under the plain meaning of "emergency," that statute only applies when there is an immediate risk of danger to the child and that petitioner did not allege any such emergency. Rather, petitioner alleged that, if deported, he was at risk of harm in El Salvador, which the state asserts presents only a possibility of being deported and put in harm's way and does not present the required immediate risk of harm.

Petitioner responds that the court had jurisdiction because petitioner was in Oregon at the time that he filed his petition and the court found that petitioner's father repeatedly physically abused petitioner and that petitioner was physically threatened by criminal gangs in El Salvador. Petitioner asserts that other jurisdictions have determined that temporary emergency jurisdiction is appropriate when the child has been subjected to physical abuse in another jurisdiction and the risk of harm is ongoing if the child is returned to that parent in that jurisdiction. Petitioner points out that the juvenile dependency code seeks to protect children from substantial risks of harm, *G. A. C. v. State ex rel Juv. Dept.*, 219 Or App 1, 14, 182 P3d 223 (2008), and thus we are not required to wait for a manifestation of actual harm to petitioner—such as imminent deportation back to his physical abusers—to take action.

As the parties point out, there is no Oregon case law interpreting temporary emergency jurisdiction under the UCCJEA, ORS 109.751(1). We take on that task now applying our usual methodology of examining "the text and context of the provision in light of any legislative history that may be appropriately considered." *Greenfield*, 259 Or App at 698. In construing the UCCJEA, a uniform law, we must give consideration "to the need to promote uniformity

of the law with respect to its subject matter among states that enact it." ORS 109.831. Because we are tasked with construing the UCCJEA uniformly, we consider case law from other states as part of the statutory context. *Ivers v. Salladay*, 253 Or App 195, 204, 289 P3d 334 (2012).

We turn back to the text of ORS 109.751(1), which provides that an Oregon court "has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse." As both parties indicate, the use of the word "emergency" indicates the presence of some kind of situational immediacy necessitating protection of the child.[4] Under the words of the statute, the "emergency" must be the child being "subjected to or threatened with mistreatment or abuse." Thus, the plain text of ORS 109.751(1) provides that a court can take temporary emergency jurisdiction if the child is in the state and is in immediate need of the court's protection from mistreatment or abuse. The state's argument thus presents the question of what is an "immediate need." Because that answer cannot be construed from the text alone, and to promote uniformity of the application of the UCCJEA, we turn to cases from other states that have confronted that question.

Other states confronting that same provision have interpreted it to encompass "a situation in which a child is in immediate risk of danger if returned to a parent's care." *In re Nada R.*, 89 Cal App 4th 1166, 1174, 108 Cal Rptr 2d 493, 499 (2001); *see also, e.g., In re Jaheim B.*, 169 Cal App 4th 1343, 1349, 87 Cal Rptr 3d 504, 508 (2008) (same); *In re NC*, 294 P3d 866, 874 (Wyo 2013) ("The only question is whether the record supports a finding that the children were at risk of mistreatment or abuse if they were returned to their home in Texas."); *Saavedra v. Schmidt*, 96 SW3d 533, 544 (Tex App 2002) ("States have a *parens patriae* duty to children within their borders, and the possibility that allegations of immediate harm might be true is sufficient for a court to

---

[4] "Emergency" is defined as "1 : an unforeseen combination of circumstances or the resulting state that calls for immediate action * * * a : a pressing need : EXIGENCY[.]" *Webster's Third New Int'l Dictionary* 741 (unabridged ed 2002).

assume temporary emergency jurisdiction in the best interests of the child under the UCCJEA.").

Other courts have also determined that temporary emergency jurisdiction continues as long as the risk of harm creating the emergency is ongoing. *See In re NC*, 294 P3d at 876 (proper exercise of jurisdiction where the evidence showed "that the threat of mistreatment or abuse of the child continued to exist"); *see also In re Jaheim B.*, 169 Cal App 4th at 1349-50, 87 Cal Rptr 3d at 508 (continuing to exercise emergency jurisdiction is appropriate "as long as the reasons underlying the dependency exist"); *In re Nada R.*, 89 Cal App 4th at 1175, 108 Cal Rptr 2d at 500 ("If the risk of harm creating the emergency is ongoing, then the court should be afforded jurisdiction to prevent such harm.").

When faced with the question, state courts have also determined that the court's exercise of temporary emergency jurisdiction is appropriate to protect a child from a risk of harm from a parent living in another jurisdiction, as long as the child will be returned to the parent at some point and the risk of harm upon return will be immediate. *See, e.g., In re NC*, 294 P3d at 874 (court had temporary emergency jurisdiction where the children were at risk of mistreatment or abuse if returned to the mother in Texas, even though the children were with their grandparent in Wyoming with permission of the mother); *Feria v. Soto*, 990 So 2d 418, 422 (Ala App 2008) (temporary emergency jurisdiction appropriate where the child at risk of abuse if returned to the mother, who had primary custody, even though the child was with the father with the mother's permission and the mother did not seek the child's return). *Cf. Anderson v. Deas*, 273 Ga App 770, 771, 615 SE2d 859, 860 (2005) (holding lower court was authorized to decline to exercise jurisdiction because "the child is in no immediate danger because she continues to be in [the mother's] custody," where the risk to the child was from the father). In that way, state courts have determined that the test is as stated above by the California courts; that is, the "emergency" governing the necessity to protect a child through temporary emergency jurisdiction is the immediate risk of danger to the child *if* the child is returned to the parent. We agree with those courts that,

for purposes of temporary emergency jurisdiction under the UCCJEA, the proper focus for courts is whether the child will be at immediate risk of harm upon return to the parent.[5]

Here, the question presented by the state's argument is whether a court can exercise temporary emergency jurisdiction under ORS 109.751(1) when it is unknown *when* a child might be returned to the abusive parent, but the return could occur at any time. That is, the state does not contest that petitioner will be at risk of abuse or mistreatment if he is, in fact, returned to his father in El Salvador, nor does the state contest that petitioner is at risk of being deported at any time to El Salvador. Because, as discussed above, the state has focused on the wrong question when determining whether an emergency exists necessitating court action to protect a child, as provided in ORS 109.751, we reject the state's argument. We conclude that the juvenile court properly exercised its temporary emergency jurisdiction because it is not disputed that petitioner is at risk of abuse or mistreatment if he were returned to his father in El Salvador, and that return could happen at any time.

## DEPENDENCY JURISDICTION

Having concluded that the juvenile court had jurisdiction under the UCCJEA in this case, we turn to the merits of petitioner's argument in seeking reversal of the court's dismissal of his dependency petition. In addressing that issue, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*,

---

[5] In so concluding, we emphasize that the question raised in this case by the state is whether an "emergency" exists, for purposes of the UCCJEA, when the precise timing of petitioner's return to an undisputed risk of harm in El Salvador is unknown, but could happen at any time. That question is different from the one that we recently confronted in *Dept. of Human Services v. T. L.*, 279 Or App 673, 379 P3d 741 (2016). In that case, we concluded that, in considering whether jurisdictional bases under ORS 419B.100(1) persist, the juvenile court had to take into consideration the parents' proposal that the child be cared for by his aunt, because that evidence was probative of the degree of risk to the child posed by the child's parents' circumstances. Here, there is no proposal of a suitable alternative for petitioner once he is deported, and the trial court found that petitioner will be exposed to a risk of harm from his father and dangerous gangs when returned to El Salvador.

257 Or App 633, 639, 307 P3d 444 (2013). In the context of this case, in which the juvenile court declined to exercise jurisdiction over petitioner, and in which the parties do not dispute the juvenile court's factual findings, our task is to determine whether the juvenile court was legally required to take jurisdiction over petitioner based on the evidence and the supporting inferences when viewed in the light most favorable to the juvenile court's disposition.

On appeal, petitioner argues that the findings of the juvenile court required the court to conclude that he was within the juvenile court's dependency jurisdiction. Petitioner argues that, under the totality of the circumstances—including his lack of a guardian in the United States, his running away from an abusive parent, and his risk of harm from El Salvadorian gangs—his condition or circumstances are such as to endanger his welfare, ORS 419B.100(1)(c).[6] The state, for its part, appears to concede that the findings made by the juvenile court satisfy the jurisdictional requirements of ORS 419B.100(1).

We agree with petitioner that the findings made by the juvenile court, as well as the underlying evidence and permissible inferences drawn from that evidence, required the court to take dependency jurisdiction of petitioner. Under ORS 419B.100(1)(c), "[t]he key inquiry is whether, under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child." *Dept. of Human Services v. G. J. R.*, 254 Or App 436, 443, 295 P3d 672 (2013). Here, the juvenile court found that petitioner proved the following jurisdictional allegations:

"2. The child is within the jurisdiction of the Court by reason of the following facts:

"A. * * * * *

"i. The child's mother is deceased.

"ii. The child's father repeatedly physically abused him throughout his childhood and until the child left El Salvador.

---

[6] Petitioner also argues that the conditions for jurisdiction under ORS 419B.100(1)(a), (e)(C) and (D), and (f) were met. Because we conclude that the juvenile court had jurisdiction under ORS 419B.100(1)(c), we do not address petitioner's additional arguments under those subsections.

"iii. The child ran away from the home of his father.

"iv. The child has been threatened with physical harm by criminal gangs in El Salvador and is at risk of harm if he returns to El Salvador.

"v. The child has no legal guardian in the United States.

"* * * * *

"vii. The child is currently in the physical custody of the U.S. Department of Health and Human Services, Office of Refugee Resettlement, which has been unable to identify any relatives with whom the child could live."

Notably, the court did not make any express findings that would support a determination that there was not a reasonable likelihood of risk of harm to petitioner's welfare; nor does the evidence, or the reasonable inferences taken from that evidence, support such an implied finding. The court's express findings placed petitioner within the jurisdiction of the juvenile court because they demonstrate that petitioner's condition or circumstances are such as to endanger his welfare, ORS 419B.100(1)(c), and the evidence in the record, and reasonable inferences from that evidence, compels the conclusion that petitioner's welfare is endangered as a matter of law. That is, based on the court's findings, the evidence, and the permissible inferences from the evidence, a reasonable fact finder would be compelled to conclude that petitioner was within the jurisdiction of the juvenile court under ORS 419B.100(1).

At the jurisdictional stage of the proceedings, the juvenile court's only task is to determine if the child is within the jurisdiction of the court as provided in ORS 419B.100 and, if the child is within that jurisdiction, to make the child a ward of the court, ORS 419B.328. "In determining whether it has jurisdiction, the court's objective is to determine whether the child needs the court's protection, not to determine the nature or extent of that protection." *State ex rel DHS v. Kamps*, 189 Or App 207, 213-14, 74 P3d 1123 (2003) (reversing dismissal of dependency petitions where court acknowledged that the evidence substantiated physical abuse, but not the identity of the abuser). The juvenile

court erred when it did not take jurisdiction of petitioner after finding that petitioner had proved jurisdictional allegations that put petitioner within the court's jurisdiction as a matter of law.

Motion to dismiss denied; reversed and remanded.