EGAN, C. J.
*54 In this juvenile dependency case, child challenges the juvenile court's order declining to take dependency jurisdiction over him and dismissing his petition.[1] On appeal, child argues that the juvenile court erred because he was within the jurisdiction of the juvenile court as a matter of law. As explained below, we agree with child and reverse and remand.
This case involves a child from Guatemala who left his home and traveled alone to the United States when he was 17 years old. He then filed a juvenile court dependency petition on his own behalf. At the jurisdictional hearing, child was the only party to present evidence; no other party offered evidence controverting child's evidence. Nonetheless, the juvenile court was not required to believe child's evidence. See State v. Johnson , 335 Or. 511, 523, 73 P.3d 282 (2003) (a trial court is generally entitled to find "that a party's evidence is not sufficiently persuasive").
As we understand the juvenile court's ruling, however, the court did not disbelieve or otherwise reject child's evidence of his circumstances in Guatemala as insufficiently persuasive. Rather, the court ruled as a matter of law that the historical facts as established by child's evidence do not provide a basis for dependency jurisdiction. Given that understanding of the court's ruling, we describe the facts consistently with child's evidence and the court's few express factual findings, which relate solely to events that occurred after child arrived in the United States.[2]
Throughout child's life in Guatemala, father regularly physically abused mother, child's siblings, and child. Over a year before child left Guatemala, he and mother left the home they shared with father. In a proceeding with local authorities, mother stated that she had left father because *55 he kicked and punched her. Father then began living with another woman and her children and thereafter provided little or no care or support to child. Child's family attempted multiple times to have the local township authorities remedy father's lack of support for and abuse of the family members, but the authorities were unable to help the family.
In September 2015, when child was 17 years old, father saw child and child's sister on a road. During that encounter, father beat child severely and threatened to kill him once he turned 18. Child's sister witnessed the beating. After the attack, the local authorities met with the family members to address the family problems. At the proceeding, father admitted that he hit child and told the authorities repeatedly that he is not afraid of the applicable laws or other requirements. The authorities then asked child to forgive father. Soon after, child was chased by several men. He was later told by a child of the *519 woman with whom father lived that the men had been sent by father to harm child. It was after these incidents that child, encouraged by mother, left his home with the intention to live with his brother in Oregon.
Child was detained by United States federal immigration officials, in November 2015, after he entered the United States alone with no lawful immigration status. He was placed into removal proceedings and held in Texas until he was released into the custody of his brother in Oregon. In June 2016, when he was still 17 years old, child filed a juvenile dependency petition on his own behalf in an Oregon juvenile court.[3]
Child's petition alleged that he was within the jurisdiction of the juvenile court under ORS 419B.100(1)(a), (c), and (e). Specifically, child's petition alleged that he was within the jurisdiction of the juvenile court for the following reasons:
*56 "The conditions and circumstances of the above-named minor child are such as to endanger his own welfare; the child is beyond the control of his parents; the child's mother and father have abandoned the child; the child's mother and father have failed to provide the child with the care or education required by law; and the child's mother and father have failed to provide the child with the care, guidance, education and protection necessary for the physical, mental or emotional well-being of the child, to wit:
"a. The father has subjected the mother to domestic violence, most of which occurred in the presence of the child, posing a risk of harm to the child.
"b. The father physically abused the child, resulting in harm to the child.
"c. The child's mother is unable to protect him from the ongoing risk of harm posed by the father.
"d. The mother is currently in Guatemala and is unable and unwilling to be a custodial resource.
"e. The father is currently in Guatemala and is unable and unwilling to be a custodial resource.
"f. The child has no legal guardian in the United States.
"g. The mother allowed the child to leave the home, without making safe or long-term plans for the legal custody and care of the child, and since that time, the mother has failed to resume care or custody of the child.
"h. The father allowed the child to leave the home, without making safe or long-term plans for the legal custody and care of the child, and since that time, the father has failed to resume care or custody of the child.
"i. The child is in deportation proceedings. The child faces a threat of harm if he is returned to Guatemala, and needs the assistance of the juvenile court to address this issue."
Child sought juvenile court jurisdiction so that he could qualify for federal special immigrant juvenile status, which requires a state juvenile court to declare the juvenile immigrant a dependent based on findings that the juvenile cannot be returned to his or her parents due to abuse, neglect, *57 or abandonment. See 8 USC § 1101(a)(27)(J) (defining special immigrant juvenile status).
Before the dependency hearing, an investigator, Comstock, was hired to locate and interview child's family members and local authorities in Guatemala. He could not contact father but learned that father was actively avoiding contact with all public officials and authorities. Comstock told the juvenile court that his understanding, from reviewing documents from local authorities and talking with others in Guatemala, was that local authorities were also looking for father for reasons related to child support and criminal accusations of violence. In addition, Comstock reported that family members were afraid of father and did not want to get *520 involved in light of that fear. Comstock's report included information from an interview with child's brother who lives in Oregon, including information that father had engaged in frequent physical abuse of the family members and details about father's last attack on child.
Neither parent participated in the hearing on child's dependency petition in December 2016. Prior to the hearing, however, mother had stipulated that father had physically abused child throughout his life, that child had witnessed physical abuse by father of mother and child's siblings, that father's whereabouts are unknown, and that she was unable to protect child from physical abuse by father. She also stipulated that child had not resided with her since November 2015.
Child's immigration attorney testified at the hearing that child would be deported unless he could show that he was eligible for some form of legal immigration status. She testified that special immigrant juvenile status was the most likely avenue for that relief for child as an unaccompanied child entering the United States. She added that child intended to seek that special immigrant juvenile status to prevent his deportation but that, to apply for that status, a state court must first declare child a dependent due to abuse, abandonment, or neglect by his parents.
As noted, child's petition sought juvenile court jurisdiction under several paragraphs of ORS 419B.100(1). After *58 the dependency hearing, the juvenile court did not make explicit factual findings related to petitioner's life before he arrived in the United States, over a year prior to the hearing. Instead, the court's explicit findings focused on facts about child's entry into the United States, his immigration detention, and immigration status. The juvenile court's order included the following determination:
"After careful review of all of the evidence, including the witness testimony, and exhibits, this Court respectfully declines to take jurisdiction.
"The Court does not find that there is a current risk of serious loss or injury. The harm alleged is speculative and depends on whether he is deported, and whether he is returned to Guatemala. Even in the unfortunate event that [child] is deported, given his age and ability to travel on his own, the Court is not convinced that juvenile court protection is warranted."
The juvenile court added that State v. L. P. L. O. , 280 Or.App. 292, 381 P.3d 846 (2016), "cited by counsel, stands for the proposition that this Court has subject matter jurisdiction. This Court upholds and acknowledges that finding by the Court of Appeals. However, in this particular case and under these facts, the Court does not find a current risk of harm that is non-speculative." The court declined to take jurisdiction over child and dismissed his petition.
On appeal, child asserts that the juvenile court erred when it dismissed his petition because, based upon the facts alleged in the petition and the evidence presented at trial, he is within the juvenile court's jurisdiction under either ORS 419B.100(1)(c) or ORS 419B.100(1)(e)(D). Child contends that the evidence presented-including the statements by his brother, investigators, and himself and the records of the proceedings of the local authorities in Guatemala-demonstrates that his condition or circumstances are such as to currently endanger his welfare. According to child, that evidence showed that he was subject to a current threat of harm because father physically abused him; father physically abused his mother and siblings, which occurred in his presence; mother is unable to protect him from the ongoing risk of harm posed by father; parents are in Guatemala and *59 cannot provide parental care; he has no legal guardian in the United States; and parents allowed him to leave home without plans for his custody and care and have not resumed care or custody of him. As noted, the juvenile court's decision was not based on a determination that the acts alleged by child did not occur but, instead, on the juvenile court's legal conclusion that the current threat of harm was "speculative." That legal conclusion, child contends, is incorrect as a matter of law. We agree with child that the juvenile court erred when it declined to take jurisdiction over child under *521 ORS 419B.100(1)(c).[4]
In any dependency action, the petitioner bears the burden to prove that dependency jurisdiction is warranted under ORS 419B.100(1) because the child requires the juvenile court's protection due to the facts alleged in the dependency petition. Dept. of Human Services v. C. J. T. , 258 Or.App. 57, 61-62, 308 P.3d 307 (2013). The petitioner must prove the facts supporting the assertion of dependency jurisdiction under ORS 419B.100(1) by a preponderance of the evidence. ORS 419B.310(3). In addition, the court shall have jurisdiction under ORS 419B.100(1)"even though the child is receiving adequate care from the person having physical custody of the child." ORS 419B.100(2).
ORS 419B.100(1)(c) grants a juvenile court jurisdiction over a child "[w]hose condition or circumstances are such as to endanger the welfare" of the child. To determine if the child's welfare is endangered, we look at whether the child's conditions or circumstances "present a current threat of serious loss or injury." C. J. T. , 258 Or.App. at 61, 308 P.3d 307. The key inquiry under ORS 419B.100(1)(c) is whether, "under the totality of the circumstances, there is a reasonable likelihood of harm to the welfare of the child." Dept. of Human Services v. C. Z. , 236 Or.App. 436, 440, 236 P.3d 791 (2010). Additionally, the petitioner must "prove that there is a nexus connecting the parent's allegedly risk-causing conduct and the harm to the child and also that the risk of harm is present at the time of the hearing and not merely speculative."
*60 Dept. of Human Services v. K. V. , 276 Or.App. 782, 791, 369 P.3d 1231, rev. den. , 359 Or. 667, --- P.3d ---- (2016) (internal quotation marks omitted).
"In determining whether it has jurisdiction, the court's objective is to determine whether the child needs the court's protection, not to determine the nature or extent of that protection." State ex. rel. DHS v. Kamps , 189 Or. App. 207, 214, 74 P.3d 1123 (2003). The juvenile court's only task at the jurisdictional hearing is to determine if the child is within the jurisdiction of the court as provided in ORS 419B.100(1) and, if the child is within that jurisdiction, to make the child a ward of the court until that wardship is terminated or the child turns 21 years old. See ORS 419B.328 ; L. P. L. O. , 280 Or.App. at 310, 381 P.3d 846 (citing ORS 419B.328).
We have concluded that the juvenile court erred when it did not take jurisdiction over a child whose condition and circumstances were similar to those in this case. In L. P. L. O. , the child was 17 years old and in deportation proceedings at the time that he filed his dependency petition. 280 Or.App. at 294-95, 381 P.3d 846. The juvenile court declined to take jurisdiction even though it had found that the child's mother was deceased, that the child's father physically abused him throughout his life until the child ran away from home and left El Salvador, that child had been threatened by gangs and was at risk if he returned to El Salvador, and that the child had no legal guardian in the United States. Id. at 309-10, 381 P.3d 846. We concluded that the court's findings, the evidence in the record, and the reasonable inferences from that evidence, compelled the conclusion that the child's welfare was endangered as a matter of law, and, consequently, the child was within the juvenile court's jurisdiction under ORS 419B.100(1)(c). Id. at 310, 381 P.3d 846.
We fail to see a meaningful distinction between the condition or circumstances that created danger to the welfare of the child in L. P. L. O. and those faced by child in this case that would permit a different conclusion about the necessity of the juvenile court's protection. In both cases, the children ran away from home due to physical abuse by their fathers, were 17 when they petitioned for dependency jurisdiction, had received credible further threats to their *61 physical safety, and were in the United States without a legal guardian.[5] *522 Moreover, in this case, the record does not support the juvenile court's decision to dismiss child's dependency petition based on the juvenile court's conclusion that "[t]he harm alleged is speculative and depends on whether [child] is deported" and that "given his age and ability to travel on his own, the Court is not convinced that juvenile court protection is warranted." We understand the court's ruling to be based on the premise that, despite the evidence presented, the likelihood of harm to child's welfare is speculative because it depends on child's deportation and, if he were deported, on child's inability to avoid further injury from father even though he is old enough to travel to escape father. In sum, the juvenile court's ruling does not conclude that the acts alleged and for which child presented evidence did not occur but, rather, that the risk of harm from the circumstances created by those acts was speculative. The juvenile court's rationale is flawed and cannot legally support the juvenile court's denial of jurisdiction and dismissal of child's petition.
Here, parents' actions-including father's abuse and threats of future harm and mother's inability to protect child from father-created a long-term and ongoing danger to child's welfare. Child has been the victim of physical abuse by father, has been exposed to father's physical abuse of others, and is at risk of further physical harm from father. The harm that child has experienced, from which mother has not been able to protect him and which he feared would continue in the future, directly led to child leaving home, which itself creates the reasonable likelihood of harm to child's welfare. ORS 419B.100(1) authorizes the juvenile court to not only protect children who have suffered actual harm but also to protect children from a substantial risk of harm. G. A. C. v. State ex. rel. Juv. Dept. , 219 Or.App. 1, 14, 182 P.3d 223 (2008).
*62 Our cases "treat it as axiomatic that the physical abuse of a child endangers the child's welfare and, thus, furnishes a basis for the exercise of dependency jurisdiction." Id. at 11, 182 P.3d 223. And the fact that parents do not have physical custody of a child at the time of the jurisdictional hearing does not defeat jurisdiction. See Dept. of Human Services v. S. R. C. , 263 Or.App. 506, 512-13, 328 P.3d 814, rev. den. , 356 Or. 397, 337 P.3d 127 (2014) (rejecting argument by the mother that the child was no longer at risk from the mother, who was incarcerated, because the child had been removed from the mother and placed in foster care and the circumstances were such that it was unlikely that the mother would ever parent the child again); see Dept. of Human Services v. C. M. , 284 Or.App. 521, 530, 392 P.3d 820 (2017) (affirming the juvenile court's jurisdiction over a child who had been placed in foster care for nearly seven weeks prior to the dependency hearing, based on an act of violence by the father towards the mother and sister while the child slept in the same room); see also ORS 419B.100(2) (juvenile court shall have jurisdiction under ORS 419B.100(1)"even though the child is receiving adequate care from the person having physical custody of the child").
Child's physical distance from parents does not defeat dependency jurisdiction here. Child was not in the custody of father and mother at the time of the hearing only because he fled home to escape the threat of harm posed by father, which mother could not prevent. Child presented evidence from many sources, including records from authorities in Guatemala, that corroborated child's allegations that father physically abused child and that he witnessed the physical abuse of mother and child's siblings. In the month before child left Guatemala, while child was living with mother only, father beat him severely, threatened to kill him when he turned 18, and sent men to harm him. Father's history of violence toward child and others, the ineffectiveness of intervention by the local authorities, father's brutal physical attack of child even after child moved away from father, and father's threat to kill child all demonstrate that father would likely harm child again. Child's physical distance from father at the time of the hearing, the result *523 of running away from home, does not mean that his condition *63 or circumstances are such that his welfare is not currently endangered. To say otherwise-that the condition or circumstances of a child who ran from the abuse of his father do not create a current, reasonable likelihood of harm to the welfare of the child-runs counter to our case law and the purposes and policies of juvenile dependency.
Neither our state's statutes nor our case law provide support for the juvenile court's conclusion that a child who has run away from a home in which he faces danger to his physical well-being does not warrant the juvenile court's protection because his "age and ability to travel on his own" make the risk of harm speculative. The legislature has stated that the policy of the State of Oregon is to recognize that children have the legal rights to permanency with a safe family; freedom from physical, sexual, and emotional abuse; and freedom from substantial neglect of basic needs. ORS 419B.090(2)(a). And the provisions of ORS chapter 419B "shall be liberally construed to the end that a child coming within the jurisdiction of the court may receive such care, guidance, treatment and control as will lead to the child's welfare and the protection of the community." ORS 419B.090(2)(c). It is also the policy of the state to "safeguard and promote each child's right to safety, stability and well-being and to safeguard and promote each child's relationships with parents, siblings, grandparents, other relatives and adults with whom a child develops healthy emotional attachments." ORS 419B.090(3). Those protections provided to children by the jurisdiction of the juvenile court do not end the moment a child turns 18. In fact, the legislature has expressly provided that a child found to be within the jurisdiction of the court may continue to receive the court's protection until the child is 21 years old. See ORS 419B.328 (a child found to be within the jurisdiction of the court under ORS 419B.100(1) is a ward of the court and that wardship may continue until the ward turns 21). And, again, the juvenile court shall have jurisdiction under ORS 419B.100(1)"even though the child is receiving adequate care from the person having physical custody of the child." ORS 419B.100(2).
Moreover, the physical harm that child has experienced, which mother has not been able to protect him from *64 and which he fears will continue in the future, directly led to child leaving home. After child fled his home, he became highly likely to suffer harm as a result of parents' inability to care for and protect him and his lack of a legal guardian in the United States. See G. A. C. , 219 Or.App. at 14, 182 P.3d 223 (stating that the condition or circumstances of a child who had run away from home in the past as a result of mother's mistreatment had "place[d] him at risk of harm"). Certainly, if a child who may try to run away from home due to mistreatment is presently at risk of harm, the welfare of child, here, who has run away from home because of physical abuse and who remains outside of the custody, support, and care of parents at the time of the jurisdictional hearing, is currently endangered. That risk of harm is not speculative.
Thus, in this case-where the juvenile court accepted the evidence showing that child faces physical abuse from his father, that mother is unable to protect him from that physical abuse, that he has fled his home to escape the physical abuse and is no longer under parents' care, and that he is without a legal guardian-the juvenile court's determination that child's condition or circumstances do not warrant the jurisdiction and protection of the juvenile court because the risk of harm is speculative was error.
Accordingly, we conclude as a matter of law that child's condition or circumstances are such that they endanger his welfare because they present a current threat of harm to him. Therefore, the risk of harm was not speculative and the juvenile court erred when it declined to take jurisdiction over child under ORS 419B.100(1)(c) and dismissed his petition. We reverse the juvenile court's order declining to take jurisdiction over child and dismissing child's petition.
Reversed and remanded.

See ORS 419A.200(1) (providing for appeal of a juvenile court judgment); ORS 419A.205(1)(c) (providing that "[a]ny final disposition of a petition" is a judgment "[f]or the purpose of being appealed").

Child requests de novo review only "if this court determines that the case rests on disputed factual findings." There are no disputed facts relevant to the outcome of this case; accordingly, we do not exercise our discretion to review the record de novo . See ORAP 5.40(8)(c).

The juvenile court retains its authority to exercise its exclusive jurisdiction over child's petition even after child's 18th birthday because the dependency proceedings were initiated when child filed the petition at age 17. See State v. L. P. L. O. , 280 Or.App. 292, 304, 381 P.3d 846 (2016) ("juvenile court's exclusive jurisdiction over a dependency case involving a person who is under 18 years of age attaches at the initiation of proceedings and is not thereafter lost merely because the child turns 18 years old before a wardship is established").

Because we conclude that child is within the jurisdiction of the court under ORS 419B.100(1)(c), we do not address whether the court also erred by failing to conclude that ORS 419B.100(1)(e)(D) brought child within the juvenile court's jurisdiction.

In L. P. L. O. , the child had previously been placed with siblings in Massachusetts but had then been placed in a facility in Oregon. 280 Or.App. at 294-95, 381 P.3d 846. That difference between the child in that case and the one in this case is of little consequence in our analysis of the risk of harm to the welfare of the child under ORS 419B.100(1)(c) in light of ORS 419B.100(2).