Submitted March 8, vacated and remanded June 2, 2016

In the Matter of A. K. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. J. H.
and M. A. H.,
*Appellants.*

Clatsop County Circuit Court 14JU03564;
A160542 (Control), A160553

In the Matter of M. R. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. J. H.
and M. A. H.,
*Appellants.*

Clatsop County Circuit Court 14JU03566;
A160544, A160555

In the Matter of T. M. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. J. H.
and M. A. H.,
*Appellants.*

Clatsop County Circuit Court 14JU03565;
A160546, A160554

375 P3d 579

608

Megan L. Jacquot filed the brief for appellant M. J. H.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Valerie Colas, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant M. A. H.

Ellen F. Rosenblum, Attorney General, Paul L. Smith, Deputy Solicitor General, and Erin K. Galli, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Egan, Judge, and Shorr, Judge.

**SHORR, J.**

Mother and father appeal from judgments of the juvenile court that changed the permanency plans for their three children from reunification to adoption. Mother and father both challenge the court's conclusions that the Department of Human Services (DHS) had made reasonable efforts to reunify the family and that mother had not made sufficient progress to enable the children to return home.[1] They also both argue that the juvenile court erred in changing the permanency plans to adoption, while in a separate dependency case involving the same three children, the plans remained reunification. Additionally, father challenges certain factual determinations of the court and asks that we exercise our discretion to review those determinations *de novo*.

We conclude that the juvenile court erred in changing the permanency plan to adoption for each of the three children while a separate plan of reunification for each child was also in effect in a separate dependency case. In this case, where DHS was maintaining separate, concurrent dependency cases involving the same children, it was error for the juvenile court to set different plans in different cases for the same child. Because the court erred in changing the children's plans on that basis, we do not reach parents' additional arguments. Accordingly, we vacate and remand the permanency judgments for further proceedings.

We set out only those facts necessary to our disposition of this case, which are largely procedural. Mother and father have three children together, M, T, and A, who were 11, 10, and 2 at the time of the permanency hearing. Mother and father have had an off-and-on relationship with instances of domestic violence, substance abuse, and child neglect that have precipitated reports to DHS over the years and resulted in removal of the children from parents' care in 2010 and again in 2013.

In October 2014, while the children were in parents' care, M contacted his aunt with concerns that mother was

---

[1] On appeal, neither parent argues that DHS failed to show that father had not made sufficient progress to enable the children to return home.

using drugs. In November, DHS removed the three children from parents' care, placed them in relative foster care, and filed a dependency petition with the court for each child (the 2014 dependency case).[2] In January 2015, the court took jurisdiction of the children based on the following allegations in the petitions:

"3A)  Mother is involved in criminal activities that interfere with her ability to safely parent the children, placing them at risk of harm;

"3B)  Mother leaves the children with unsafe care providers, placing them at risk of harm;

"3C)  Despite having been referred for services to address mother's substance abuse and parenting skills, mother has been unable to remedy the problems, placing the children at risk of harm;

"3D)  Mother's substance abuse interferes with her ability to safely parent the children, placing them at risk of harm;

"* * * * *

"3F)  Despite having been referred for services to address father's substance abuse and parenting skills, father has been unable to remedy the problems, placing the children at risk of harm;

"3G)  Father's substance abuse interferes with his ability to safely parent the children, placing them at risk of harm;

"3H)  Father has engaged in a pattern of domestic violence with mother and is currently in a relationship with mother, placing the children at risk of harm;

"3I)  Father leaves the children with unsafe care providers, placing the children at risk of harm;

"3J)  Father's chaotic lifestyle interferes with his ability to safely parent the children, placing them at risk of harm."

The court determined the plan for each child to be return to parent, with a concurrent plan of adoption.

---

[2] DHS filed a separate petition for each of the three children, resulting in a separate case for each child. Because the hearings for those cases were conducted at the same time, and the judgment entered in each case was identical, for ease of reference, we refer to the 2014 petitions in the singular as the "2014 dependency case."

On June 24, 2015, DHS filed new dependency petitions with the juvenile court, alleging that "mother has mental health issues that interfere with her ability to safely parent her children, which places the children at risk of harm," and that, "[d]espite being offered services by DHS, father has failed to ameliorate the circumstances that led to the child being taken into care." Because DHS filed new petitions instead of seeking to amend the petitions filed in the 2014 dependency case, those petitions created a new case for each child (the 2015 dependency case). The 2014 and 2015 dependency cases were never consolidated.[3]

In late August, the court took jurisdiction of the children based on the allegations in the 2015 petitions and set the plan for each child as return to parent with a concurrent plan of adoption. The following week, in September 2015, the court held a permanency hearing in the 2014 dependency case at the request of DHS. DHS sought to change the plan for each child in the 2014 dependency case from reunification to adoption. In arguing for the change in plan, DHS advocated that the 2014 dependency case and the 2015 dependency case were separate cases that should be treated separately. DHS also told the court that it was not seeking a change in the plans in the 2015 dependency case, and that it could proceed in that case based on a plan of return to parent.

At the hearing, the parties argued whether the plans in the 2014 dependency case could be changed to adoption, while the plans in the 2015 dependency case remained return to parent. The juvenile court concluded that, because the 2014 and 2015 cases were separate, there could be a different plan with respect to each. The court reasoned that, otherwise, "if something came to light about a parent a year into the case, and the agency filed a new petition, then every time you'd have to start over." The court then found, among other things, that DHS had made reasonable efforts to reunify the family and neither mother nor father had made sufficient progress

---

[3] Like in the 2014 dependency case, in 2015, DHS filed a separate petition for each of the three children, resulting in a separate case for each child. Because the jurisdictional hearings for the 2015 cases were conducted at the same time, and the judgment entered in each case was identical, for ease of reference, we also refer to the 2015 petitions in the singular as the "2015 dependency case."

to enable the children to return home. Based on those conclusions, the court changed the permanency plan for each child in the 2014 dependency case from return to parent to adoption. The court did not issue a judgment or order with respect to the 2015 dependency case at that time.

This appeal arises solely from the permanency judgments entered in the 2014 dependency case, and does not arise from any judgment or order entered in the 2015 dependency case. Mother and father both appeal the permanency judgments in the 2014 dependency case changing the plan from reunification to adoption for each of their three children. We write to address the legal issue raised by parents: whether the juvenile court erred when it changed the permanency plan to adoption for each child in the 2014 dependency case while each child's plan remained return to parent in the 2015 dependency case. On appeal, DHS "agrees that a child cannot have two different permanency plans" and states that, "[t]o the extent that the juvenile court here imposed two different case plans on each child, it erred." However, despite those concessions, DHS argues that the court did not actually impose different plans and that, even if it did, we should not correct the error because, on remand, the court could enter the same plan change again. As explained below, we disagree with DHS's position and conclude that the juvenile court did err and that the permanency judgments in the 2014 dependency case must be vacated and remanded for further proceedings.

Under ORS 419B.100(1)(c), the juvenile court has exclusive and original jurisdiction "in any case" that involves a child "[w]hose condition or circumstances are such as to endanger the welfare of the person or of others." Although that section provides that the juvenile court has jurisdiction "in any case," we have emphasized that the juvenile dependency code contemplates that a juvenile court takes jurisdiction "over a child" because, once jurisdiction is established, the child becomes a ward of the court and the court must decide who will have legal custody of the child based on "its determination of what is in the best interest and welfare of the child" under the totality of the circumstances. *Dept. of Human Services v. W. A. C.*, 263 Or App 382, 393, 328 P3d 769 (2014); *see also, e.g.*, ORS 419B.090(2)(c) ("The

provisions of this chapter shall be liberally construed to the end that *a child coming within the jurisdiction of the court* may receive such care, guidance, treatment and control as will lead to the child's welfare and the protection of the community." (Emphasis added.)); ORS 419B.310(3) ("The facts alleged in the petition *showing the child to be within the jurisdiction of the court* as provided in ORS 419B.100(1), unless admitted, must be established by a preponderance of competent evidence." (Emphasis added.)); ORS 419B.328(1) ("The court shall make a child found to be within the jurisdiction of the court as provided in ORS 419B.100 a ward of the court."). Once a child is a ward of the court, that wardship continues and "the ward is subject to the court's jurisdiction," until one of the specified statutory conditions occurs. ORS 419B.328(2). In that way, the juvenile dependency code does not contemplate that a child, and decisions about the child's welfare, will be split into separate "cases"; the code contemplates that the court will take jurisdiction of the child and make all decisions about the child based on the totality of all the circumstances of that child.

That statutory focus on the health and safety of the child continues when a court holds a permanency hearing and sets or changes the child's permanency plan. *See* ORS 419B.476 (court determinations for permanency hearings). At no point in the process does the dependency code discuss decisions of the juvenile court that affect a ward as being decisions with respect to a "case" as opposed to the "child" or "ward" over whom the court has jurisdiction. In that respect, when the court is required to set the child's "plan," which is referred to in the singular, the code continues to contemplate that there will only be one plan in place at a time per child. *See Dept. of Human Services v. D. L. H.*, 253 Or App 600, 602, 292 P3d 565 (2012), *rev den*, 353 Or 445 (2013) ("'Permanency plan,' as used in ORS 419B.476, specifically refers to a singular plan for the child, rather than a plan for each parent.").

Based on how the issue has been presented in this case,[4] we do not decide whether maintaining two separate,

---

[4] This appeal concerns only the permanency judgments entered in the 2014 dependency case. No party has requested that we take any action with respect to

but concurrent, dependency cases involving the same child is permitted under the dependency code, given that the code does not appear to contemplate proceeding in such a manner. *See* ORS 419B.806 (consolidation); ORS 419B.809(6) (petitions may be amended "at any time"). However, we conclude that, to the extent there are separate, concurrent dependency cases involving the same child, it is error for the juvenile court to set a permanency plan for a child that results in the existence of different plans for the same child at the same time in those concurrent cases.

DHS's argument that the court did not actually put into place two different plans for the children is unavailing. DHS has pointed to no legal authority, and we are aware of none, that would result in the 2015 dependency case plans automatically becoming a legal nullity or changing to conform with the 2014 dependency case plans. DHS chose to maintain the 2015 dependency case as a separate case when it requested that the court only change the plans in the 2014 dependency case. In accord with that request, the juvenile court took no action with respect to the 2015 dependency case. Thus, when the juvenile court changed each child's plan from return to parent to adoption in the 2014 dependency case, that resulted in two different plans for each child because the court had set the plans in the 2015 dependency case as return to parent the week before. The juvenile court erred when it took action that resulted in the children being subject to two different permanency plans at the same time. Accordingly, we vacate and remand the permanency judgments for further proceedings.

Vacated and remanded.

---

the 2015 dependency case, and no appeal from an order or judgment in that case is before us.