Argued and submitted January 5, affirmed March 8, petition for review denied May 11, 2017 (361 Or 486)

In the Matter of A. K. H., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. A. H.,
*Appellant.*

Clatsop County Circuit Court
14JU03564; A162942 (Control)

In the Matter of T. M. H., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. A. H.,
*Appellant.*

Clatsop County Circuit Court
14JU03565; A162943

In the Matter of M. R. H., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. A. H.,
*Appellant.*

Clatsop County Circuit Court
14JU03566; A162944

In the Matter of A. K. H., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. A. H.,
*Appellant.*

Clatsop County Circuit Court
15JU03660; A162945

In the Matter of T. M. H., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. A. H.,
*Appellant.*

Clatsop County Circuit Court
15JU03661; A162946

In the Matter of M. R. H., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. A. H.,
*Appellant.*

Clatsop County Circuit Court
15JU03662; A162947

391 P3d 985

Valerie Colas, Deputy Public Defender, argued the cause for appellant. With her on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Erin K. Galli, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F.

Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Egan, Judge, and Lagesen, Judge.

## ORTEGA, P. J.

In this consolidated juvenile dependency appeal, mother appeals multiple permanency judgments that changed the permanency plans for her three children from reunification to adoption.[1] She asserts that the juvenile court erred by changing the permanency plans away from reunification because the court erroneously concluded that the Department of Human Services (DHS) made reasonable efforts to reunify her with her children. Specifically, she argues that the record contained insufficient evidence that DHS provided any efforts that were tailored to help mother ameliorate one of several of the bases for jurisdiction—*i.e.*, mother's mental health issues. She asserts that that failure rendered DHS's reunification efforts unreasonable as a matter of law. DHS responds with several arguments, most of which we need not address because ultimately we agree with DHS that, in the particular circumstances of this case, where DHS did make some efforts aimed at ameliorating mother's mental health issues, the court did not err in concluding that DHS's efforts were reasonable. Accordingly, we affirm.

On appeal, we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the juvenile court's disposition, and assess whether, when so viewed, the record was legally sufficient to permit the juvenile court's disposition. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). We state the historical and procedural background in accordance with that standard.

DHS removed mother's children, M (age 12), T (age 11), and A (age 3), from her care in November 2014 after M contacted his aunt about mother's drug use.[2] The juvenile court took jurisdiction over the children in January 2015 based on the risk of harm created by mother's criminal

---

[1] Father is not a party to this appeal. Accordingly, we focus on the facts as they relate to mother.

[2] DHS had previously removed M and T from parents' home in 2010 and 2013 based on reports of domestic violence, substance abuse, and child neglect. DHS also removed A in 2013. In those instances, the children were eventually returned to parents' care.

activities, lack of parenting skills, substance abuse, and her practice of leaving the children with unsafe care providers (the 2014 dependency case).[3]

In June 2015, DHS filed new dependency petitions, alleging that "mother has mental health issues that interfere with her ability to safely parent her children." Because DHS filed new petitions instead of amending the petitions filed in the 2014 dependency case, the new petitions created a new case number for each child (the 2015 dependency case). The 2014 and 2015 dependency cases were not consolidated and they proceeded on separate tracks. In August 2015, the juvenile court took jurisdiction based on the allegation in the new dependency petitions and set permanency plans of reunification in that case. Shortly thereafter, DHS asked the court to change the plans in the 2014 dependency case to adoption. At the ensuing permanency hearing, DHS asserted that it was not seeking a change in the plans in the 2015 dependency case, and that it could simultaneously proceed in that case based on a plan of reunification. The parties argued about whether the plan could be changed in the 2014 dependency case to adoption while the plan in the 2015 dependency case remained reunification. Ultimately, the court entered permanency judgments changing the plans in the 2014 dependency case to adoption. No judgment or order with respect to the 2015 dependency case was entered at that time.

Mother and father appealed those permanency judgments. On appeal, we held that "to the extent there are separate, concurrent dependency cases involving the same child, it is error for the juvenile court to set a permanency plan for a child that results in the existence of different plans for the same child at the same time in those concurrent cases."[4] *Dept. of Human Services v. M. J. H.*, 278 Or App 607, 614, 375 P3d 579 (2016). Accordingly, we vacated and remanded

---

[3] Although DHS filed separate dependency petitions for each child, which resulted in separate case numbers, for ease of reference, we refer to those separate cases as "the 2014 dependency case." Similarly, we refer to separate cases initiated by new dependency petitions in 2015 as "the 2015 dependency case."

[4] We explicitly declined to decide whether it was appropriate to maintain two separate, but concurrent, dependency cases involving the same child. *Dept. of Human Services v. M. J. H.*, 278 Or App 607, 613-14, 375 P3d 579 (2016).

the permanency judgments in the 2014 dependency case for further proceedings. *Id.*

During the pendency of that appeal, DHS filed petitions to terminate parents' parental rights. The juvenile court held a several-day trial in March 2016 and, at the end, terminated parents' parental rights.[5] At that point, DHS stopped providing services to mother. We issued our decision vacating and remanding the underlying permanency judgments on June 2, 2016, and a few weeks later, DHS resumed contact with mother. On July 25, 2016, the court consolidated the 2014 and 2015 dependency cases and held the permanency hearing that is the subject of this appeal.

At that hearing, mother, father, and DHS asked the court to retain permanency plans of reunification, although the children and the court appointed special advocate (CASA) asked the court to change the plans to adoption. DHS acknowledged at the outset that, "since the termination trial in March of this year, no efforts have been made for reunification." Nevertheless, the children's attorney and the CASA asserted that, given the children's immediate need for permanency, the parents' lack of progress, and the parents' repeated failure to avail themselves of a multitude of services from DHS, the court should change the plans to adoption. The children's attorney also argued that DHS's efforts to make it possible for the children to return home were reasonable overall.

At the hearing, a DHS caseworker testified that the children were in need of permanency "as soon as possible," particularly because the children had been in substitute care for 20 months, the older two children had been within the jurisdiction of the juvenile court (and in substitute care) twice before, and the youngest child had been in substitute care for most of her life.

Some of the caseworker's testimony focused on DHS's efforts over the previous several months. She acknowledged that the juvenile court had relieved DHS of the obligation to

_____

[5] After we vacated and remanded the underlying permanency judgments in *M. J. H.*, the juvenile court set aside the judgments terminating parents' parental rights.

offer services in September 2015 when the court changed the plans in the 2014 dependency case to adoption. Nevertheless, she testified that DHS continued to offer services.[6] In particular, she testified that, on September 21, 2015, DHS "re-referred [mother] for a mental health assessment and medication management" at Clatsop Behavioral Health (CBH). DHS sent her a "re-engagement letter" on October 5, 2015, instructing mother that "you've been re-referred for these services, please go do what you have to do." The caseworker also met with mother and mother's attorney on October 26, 2015, to go over the case plan. The caseworker received and reviewed records from a mental health assessment that mother attended at CBH on November 2, 2015, and provided mother's mental health provider at CBH "on more than one occasion" with the psychological evaluation that mother had undergone in March 2015 after DHS's referral for that service. In January 2016, the caseworker arranged to meet weekly with mother at DHS to "be sure she was on track." Later, the caseworker received information that mother had received another mental health assessment on February 3, 2016. In the weeks that followed, the caseworker had "ongoing contact and consultation" with someone at CBH about "the mental health stuff" until the termination trial started in mid-March.

The caseworker explained that she had no contact with mother and provided no services from mid-March until "three weeks" before the permanency hearing that is at issue on appeal. At that point, the caseworker "made referrals for services," and "did a letter of expectation and action agreement" for mother. She also asked mother to sign the appropriate releases that were needed to move forward with services.

Mother's mental health counselor at CBH also testified at the permanency hearing. He explained that he had been providing mental health counseling to mother since February 2016 for an unspecified anxiety disorder. Although the record is not explicit, the parties appear to agree that the

---

[6] Given that mother's sole argument on appeal asserts that DHS failed to make reasonable efforts aimed at ameliorating mother's mental health issues, we focus on the testimony at the hearing that pertains to mental health services.

mental health counseling that mother received at CBH was not a service provided by DHS. Her counselor explained that mother had been engaged in Dialectical Behavior Therapy (DBT) since March 2016, which was a recommendation made in mother's March 2015 psychological evaluation, and that mother was making progress in her treatment.

The court changed the permanency plans to adoption and issued a letter opinion explaining the basis for the changes. As relevant to this appeal, the court concluded that, under the totality of the circumstances over the 20 months that the children had been in foster care, DHS had made reasonable efforts to reunify the family. The court noted that it took mother more than a year after the children were removed from her care to engage in services, and even then there was evidence that she refused to allow DHS to monitor her participation. The court concluded that, although mother was making progress on her substance abuse problems and was engaged in mental health counseling at the time of the permanency hearing, mother remained in a violent relationship with father and had not learned the parenting skills necessary to safely parent "high-needs" children. In the permanency judgment, the court made the required reasonable efforts determination and cited an extensive list of services that DHS had provided to mother over the course of the dependency cases.

On appeal, mother's argument focuses on what she asserts was a total lack of efforts to assist her in "addressing the effects of her mental health." In short, mother argues that, because DHS did not make any efforts to assist her with her mental health needs after the court took jurisdiction on that basis, and because mother's mental health needs were among the barriers to reunification, DHS failed to make reasonable efforts to make it possible for the children to safely return home. In doing so, mother does not assert that DHS failed to make reasonable efforts as to the other bases for jurisdiction (criminal activities, lack of parenting skills, substance abuse, and choosing unsafe care providers). Instead, she argues that the record lacks any evidence that DHS—in the 11 months between the jurisdictional judgment in the 2015 dependency case and the permanency hearing that is the subject of this appeal—"made efforts

to assist mother in ameliorating the effects of her mental health issues despite it being a barrier to [reunification]."

When the plan at the time of a permanency hearing is reunification, under ORS 419B.476(2)(a), the juvenile court may change the plan if the proponent of the change proves by a preponderance of the evidence "that (1) [DHS] made reasonable efforts to make it possible for the child to be reunified with his or her parent and (2) notwithstanding those efforts, the parent's progress was insufficient to make reunification possible." *Dept. of Human Services v. S. M. H.*, 283 Or App 295, 305, 388 P3d 1204 (2017). In making its determination, the juvenile court "shall consider the [child's] health and safety the paramount concerns." ORS 419B.476(2)(a). DHS's efforts are reasonable under ORS 419B.476(2)(a) if "DHS has given a parent a fair opportunity to demonstrate the ability to adjust his or her behavior and act as a 'minimally adequate' parent." *Dept. of Human Services v. C. L. H.*, 283 Or App 313, 322, 388 P3d 1214 (2017). The reasonableness of DHS's efforts depends on "the particular circumstances" of each case, *State ex rel Juv. Dept. v. Williams*, 204 Or App 496, 507, 130 P3d 801 (2006), and thus, is assessed in the "totality of the circumstances" with reference to the facts that formed the "adjudicated bases for jurisdiction." *S. M. H.*, 283 Or App at 305. Consequently, DHS's efforts are evaluated over the entire duration of the case "with an emphasis on a period before the hearing sufficient in length to afford a good opportunity to assess parental progress." *Dept. of Human Services v. S. S.*, 278 Or App 725, 735, 375 P3d 556 (2016) (internal quotation marks omitted). The totality of the circumstances can include "the burdens that the state would shoulder in providing [the] services," the "benefit [that] might reasonably be expected to flow" from the services, and whether the parent has "demonstrated an unwillingness to participate in programs." *Dept. of Human Services v. M. K.*, 257 Or App 409, 416, 306 P3d 763 (2013).

DHS asserts that the court correctly determined, based on the totality of the circumstances over the 20-month period that the children were in substitute care, that DHS made reasonable efforts. In DHS's view, even though it failed to make efforts over the approximately three-month

period between the termination trial and our decision vacating and remanding the permanency judgments in the 2014 dependency case, DHS's efforts overall were reasonable. First, DHS points out that it made extensive efforts over the life of the case to address mother's substance abuse, lack of parenting skills, and criminal activities—all of which were significant barriers to mother's reunification with the children. Second, DHS notes that, over the life of the case, it did in fact provide services aimed at addressing mother's mental health issues, and further, that during the three-month period during which DHS did not provide services, mother was receiving mental health counseling.

We agree with DHS that, in the totality of the circumstances, the juvenile court did not err in determining that DHS had made reasonable efforts. Mother does not dispute that there were multiple barriers to her reunification with the children (although she does suggest that her mental health issues were inextricably intertwined with those other barriers), and she does not dispute that DHS's efforts as to those barriers (other than her mental health) were reasonable. Instead, as noted, she asserts that there is no evidence that DHS made any efforts aimed at ameliorating her mental health issues. In fact, the record does contain evidence that DHS made efforts aimed at her mental health issues, starting with a referral for a psychological evaluation in March 2015, continuing with multiple referrals for mental health assessments in late 2015 and early 2016, and "ongoing contact and consultation" with her mental health care provider at CBH up until the time of the termination trial. Accordingly, despite mother's protestations to the contrary, DHS made efforts aimed to ameliorate her mental health issues.

Further, DHS's failure to make efforts during the three-month period between mid-March 2016 and late-June 2016 is not dispositive of the reasonable efforts determination required under ORS 419B.476(2)(a). As noted, the reasonableness of DHS's efforts depends on "the particular circumstances" of each case, *Williams*, 204 Or App at 507, and the juvenile court must evaluate efforts made over the entire duration of the case, with "an emphasis on a period before the hearing sufficient in length to afford a good

opportunity to assess parental progress." *S. S.*, 278 Or App at 735 (internal quotation marks omitted). Here, the particular circumstances of this case, and the extent of the efforts DHS made over its duration, including efforts made up until three months before the permanency hearing, support the juvenile court's determination that DHS made reasonable efforts overall.

The particular circumstances of this case show that the juvenile court originally took jurisdiction over the children on several factual bases, and overall, DHS made extensive efforts aimed at the original jurisdictional bases to make it possible for the children to be reunified with mother. In addition, as to mother's mental health issues, DHS made efforts on that front up until the time of mother's termination trial, including consultation with mother's mental health care provider. Further, it is noteworthy that mother was engaged in mental health counseling during the three-month period that DHS made no efforts. We do not intend to suggest that DHS is excused from providing a service when a parent undertakes that service on their own, but, in the particular circumstances of this case (where DHS was in the midst of a termination trial) we find it part of the totality of the circumstances the juvenile court could consider. Therefore, in the totality of the circumstances, DHS has given mother "a fair opportunity to demonstrate the ability to adjust * * * her behavior and act as a 'minimally adequate' parent." *See C. L. H.*, 283 Or App at 322 (explaining that that is the standard by which the reasonableness of DHS's efforts is evaluated).

In sum, viewing the evidence in the light most favorable to the juvenile court's disposition, the record was legally sufficient to permit the juvenile court's determination that DHS made reasonable efforts.

Affirmed.