Argued and submitted January 6, affirmed April 1, 2020

In the Matter of V. B. N. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. S.
and R. N.,
*Appellants.*

Sherman County Circuit Court
18JU03215;
A171589 (Control), A171591

In the Matter of M. R. R. N. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. S.
and R. N.,
*Appellants.*

Sherman County Circuit Court
18JU09064;
A171590, A171592

464 P3d 157

While parents and their two children were living temporarily in Oregon, the juvenile court asserted temporary emergency jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified in Oregon at ORS 109.701 to 109.834. The juvenile court entered shelter orders and then dependency judgments for both children. Parents unsuccessfully moved to dismiss for lack of subject matter jurisdiction, arguing that, due to the nature of temporary emergency jurisdiction, the juvenile court could enter shelter orders but lacked authority to enter dependency judgments. *Held*: The juvenile court did not err in denying parents' motions to dismiss for lack of subject matter jurisdiction. Under the UCCJEA, the juvenile court has authority to make custody determinations for the children, including in dependency proceedings, while exercising temporary emergency jurisdiction. Because there were no prior custody determinations from another state and no custody proceedings had been commenced in another state, the juvenile court's orders were subject to ORS 109.751(2), which did not limit the juvenile court to entering shelter orders.

Affirmed.

John A. Wolf, Judge.

Shannon Flowers, Deputy Public Defender, argued the cause for appellant J. S. Also on the briefs was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Ginger Fitch filed the brief for appellant R. N.

Carson L. Whitehead, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Affirmed.

**AOYAGI, J.**

After the juvenile court asserted dependency jurisdiction over their two children—a two-year-old boy, V, and a six-month-old girl, M—parents moved to dismiss both cases for lack of subject matter jurisdiction.[1] As the basis for their motion, parents argued that, under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), codified in Oregon at ORS 109.701 to 109.834, the juvenile court lacked subject matter jurisdiction to do anything other than enter shelter orders while exercising temporary emergency jurisdiction. The juvenile court denied the motion, and parents appeal. We conclude that the juvenile court did not err and, accordingly, affirm.

## I. UCCJEA OVERVIEW

A basic understanding of the UCCJEA is necessary to understand the facts of this case, particularly the procedural facts, so we begin by providing one.

The UCCJEA is a uniform act regarding child custody proceedings and child custody determinations. It was promulgated in 1997 to replace a previous uniform act and to reconcile conflicts between the previous act and a 1980 federal statute. *Staats v. McKinnon*, 206 SW3d 532, 544-46 (Tenn Ct App 2006). The purposes of the UCCJEA include avoiding jurisdictional conflict between states regarding child custody issues, avoiding relitigation of child custody determinations from other states, and facilitating enforcement of child custody decrees in other states. UCCJEA § 101 comment, 9IA ULA 474, 474 (2019).

The Oregon UCCJEA was enacted in 1999 and is codified at ORS 109.701 to 109.834. It applies to virtually all proceedings involving child custody issues, including dependency proceedings. *See* ORS 109.704(4) (defining "child custody proceeding" to include "dependency" proceedings); ORS 419B.803(2) ("Juvenile court jurisdiction is subject to ORS 109.701 to 109.834.").

---

[1] Mother and father both moved to dismiss, and they largely make the same arguments on appeal, so we refer to them collectively as "parents."

Under the UCCJEA, a court in a state with initial-custody jurisdiction is typically supposed to make the first child custody determination concerning a particular child. *See* ORS 109.741; ORS 109.704(8). The same court then generally has "exclusive, continuing jurisdiction" over custody issues until and unless certain events occur. ORS 109.744. A state has initial-custody jurisdiction in five circumstances. The foremost circumstance is when the state is a child's "home state," as defined in ORS 109.704(7), which pertains to where the child has been living.[2] ORS 109.741(1)(a). The second circumstance is if the child does not have a home state and certain conditions are met regarding the state seeking to exercise jurisdiction. ORS 109.741(1)(b). The third circumstance is if a court of the child's home state has affirmatively ceded jurisdiction to another court and certain conditions are met. *Id.* The fourth circumstance is if all courts having jurisdiction under subsections (1)(a) or (b) have affirmatively ceded jurisdiction to another court as the more appropriate forum. ORS 109.741(1)(c). The fifth circumstance is if no court of any other state would have jurisdiction under subsections (1)(a), (b), or (c). ORS 109.741(1)(d).

When a court lacks initial-custody jurisdiction under ORS 109.741, it generally cannot make an initial custody determination for a child. But there is one exception. Even if it lacks initial-custody jurisdiction, a court may make a custody determination, including an initial custody determination, if it has temporary emergency jurisdiction under ORS 109.751. *See* ORS 109.741(1) (prefacing the requirements for initial-custody jurisdiction with the statement, "[e]*xcept as otherwise provided in ORS 109.751*" (emphasis added)). Under ORS 109.751(1), a court "has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a

---

[2] When a child is less than six months of age, the child's "home state" is "the state in which the child lived from birth" with a parent or a person acting as a parent. ORS 109.704(7). Otherwise, a child's "home state" is the state in which the child lived with a parent or a person acting as a parent "for at least six consecutive months immediately before the commencement of a child custody proceeding." *Id.* Temporary absences from the home state are considered time in the home state. *See id.*; *Schwartz and Battini*, 289 Or App 332, 339, 410 P3d 319 (2017).

sibling or parent of the child, is subjected to or threatened with mistreatment or abuse."

As discussed more later, if there is a *previous* custody determination regarding a child, or if a custody proceeding has been *commenced* in a state with initial-custody jurisdiction, a court exercising temporary emergency jurisdiction is only authorized to make limited-duration child custody determinations. *See* ORS 109.751(3). Conversely, if there is *no* previous custody determination regarding a child, and *no* custody proceeding has been commenced in a state with initial-custody jurisdiction, a court exercising temporary emergency jurisdiction is not subject to the same limitations and instead is subject to ORS 109.751(2).

## II.   FACTS

With that basic overview of the UCCJEA in mind, we turn to the facts of this case. We state the facts in accordance with the juvenile court's findings of historical fact, which are binding so long as there is any evidence in the record to support them. *Dept. of Human Services v. J. G.*, 260 Or App 500, 504, 317 P3d 936 (2014). We also include other undisputed facts as relevant.

In January 2017, mother gave birth to V in the state of Washington, where parents were living. In December 2017, mother gave birth to another child, K, also in the state of Washington.

In February 2018, parents lost their housing in Washington and stayed in a motel in Oregon, with V and K, for about two months while trying to obtain new housing in Washington. Father used methamphetamine regularly in their motel room's bathroom. On April 10, mother left the children with father and spent a night in Washington. When father awoke on April 11, he discovered that K, who was in bed with him, had died. A drug screen run during K's autopsy later came back positive for methamphetamine.

When the police arrived at the motel room, they arrested father on an outstanding warrant. In the room, they found a zip-lock baggie containing a crystal-like substance resembling methamphetamine in a nightstand within the children's reach, as well as methamphetamine

paraphernalia on the nightstand. They also saw a "pack-and-play," where V slept, which smelled strongly of urine, sour milk, and rotten food, and which contained piled-up blankets and food remnants giving rise to "choking and ill-ness concerns."

DHS removed V and took him to the hospital. V tested negative for illicit substances but was diagnosed with a yeast infection in his genital and anal areas. V also demonstrated "hypersensitivity to touch" and developed red marks anywhere that he was touched, which hospital staff attributed to a lack of consistent touch.

On April 12, DHS filed a dependency petition for V. The juvenile court entered a shelter order the same day. Four months later, in August, the court entered a jurisdictional judgment, asserting dependency jurisdiction over V. The jurisdictional bases are mother's substance abuse interfering with her ability to safely parent V, mother's need for help from DHS to safely and adequately parent V, mother's mental health issues interfering with her ability to safely parent V, father's substance abuse interfering with his ability to safely parent V, father's criminal activities and incarceration interfering with his ability to safely parent V, father failing to maintain a safe home environment for V, father leading a chaotic lifestyle that interferes with his ability to safely parent V, father lacking the parenting skills and resources to adequately and appropriately parent V, and the totality of V's circumstances endangering V's welfare. Father and mother each admitted to the allegations relevant to each of them.

In November 2018, Mother gave birth to M in a hospital in Washington. M had a low birth weight, and tests showed that she had been exposed to amphetamines and ecstasy *in utero*. On the day she was born, due to medical concerns, M was transferred to the neonatal intensive care unit of a hospital in Oregon. On the same day, DHS removed M from mother's care and filed a dependency petition. The juvenile court entered a shelter order the next day, at which time it also entered another judgment as to V, continuing dependency jurisdiction. Two months later, in January 2019, the court entered a jurisdictional judgment as to M, taking

dependency jurisdiction over M on the same bases as it had with V.

In both the November 2018 and January 2019 dependency judgments, the juvenile court expressly made findings relevant to its subject matter jurisdiction under the Oregon UCCJEA. As to each child, the court stated that it was exercising temporary emergency jurisdiction under ORS 109.751, and it found:

"(1) the Child is present in this state; (2) it is necessary in an emergency to protect the Child because the Child is subject to or threatened with mistreatment or abuse as more specifically set forth in the Protective Custody Report ***; (3) there is no previous child custody determination that is entitled to be enforced under ORS 109.701 to 109.834; and (4) a child custody proceeding has not been commenced in a court of a state having jurisdiction under ORS 109.741 to 109.747."

In the November 2018 judgment, the court made an additional finding that "the State of Washington's Child Protective Services [(CPS)] has declined to initiate a dependency case in Washington." After its findings, the court stated in each judgment, "The custody determination in this order [or judgment] is final for purposes of the UCCJEA if Oregon becomes the children's home state."

Mother appealed the January 2019 dependency judgment regarding M. On appeal, she argued, among other things, that the juvenile court lacked subject matter jurisdiction under the Oregon UCCJEA.

In May 2019, while that appeal was pending, parents filed written motions in the juvenile court to dismiss both V's and M's dependency cases, arguing that the court lacked subject matter jurisdiction under the Oregon UCCJEA. Parents argued that both children's "home state" is Washington; that the juvenile court lacked initial-custody jurisdiction under ORS 109.741; and that the juvenile court's temporary emergency jurisdiction under ORS 109.751 was limited, such that it could issue shelter orders but could not issue dependency judgments. To do anything more than issue a shelter order, parents argued, the court would

have to obtain initial-custody jurisdiction by contacting a Washington court and requesting that it cede jurisdiction to the Oregon court.

After a hearing, the juvenile court denied the motions. The court agreed with parents that Washington is V's home state, and it opined that Washington is "likely" M's home state also, although that is "less clear." Given those conclusions, the court appears to have assumed—if not actually ruled—that it lacked initial-custody jurisdiction under ORS 109.741. Regardless, the court concluded that it had temporary emergency jurisdiction under ORS 109.751, pointing to its prior findings as establishing that the children both were present in the state and required emergency protection from mistreatment or abuse. The court noted that it was *not* relying on its prior finding regarding Washington CPS declining to initiate a dependency case in Washington, stating that it did not think that that it was "necessary" or had "any impact over whether or not we have emergency jurisdiction other than to demonstrate that there was no one else stepping up to resolve the emergency."

The court expressed the view that, because it had temporary emergency jurisdiction, it could continue protecting V and M through dependency proceedings until and unless someone commenced a proceeding in Washington. Consistently with ORS 109.751(2), the court noted that its custody determinations would remain in effect until an order was obtained from Washington, that "anyone could file a juvenile court petition in Washington," that it was not obligated to communicate with another court until there was a case pending in another court, and that its orders would become permanent if Oregon became the children's home state.

In August 2019, we affirmed without opinion the January 2019 dependency judgment regarding M.

Parents now appeal the juvenile court's denial of their motions to dismiss both dependency cases. "We review for legal error the trial court's determination that it had subject matter jurisdiction under the UCCJEA." *Schwartz and Battini*, 289 Or App 332, 337, 410 P3d 319 (2017).

### III.   SUBJECT MATTER JURISDICTION AS TO V

All of the parties' arguments on appeal regarding V also apply to M—whereas the opposite is not true—so we first address whether the juvenile court correctly concluded that it had subject matter jurisdiction to make a custody determination regarding V, specifically to issue a judgment asserting dependency jurisdiction over V.

### A.   *Scope of Issue on Appeal*

As a preliminary matter, we recognize what is not at issue. The juvenile court did not purport to exercise initial-custody jurisdiction as to either V or M, nor does DHS argue that the court had such jurisdiction as to V.[3] As such, for purposes of this appeal, we assume without deciding that V's home state is Washington and that the juvenile court did *not* have initial-custody jurisdiction under ORS 109.741.

That the juvenile court has temporary emergency jurisdiction as to both children also is not at issue. That is, parents do not dispute that the requirements in ORS 109.751(1) are met. Neither do parents dispute that the issuance of shelter orders was a proper exercise of the court's temporary emergency jurisdiction. We agree and therefore start from the proposition that the juvenile court has temporary emergency jurisdiction, which allowed it to issue shelter orders.

What then is at issue in this appeal? Parents contend that, under the Oregon UCCJEA, an Oregon court with temporary emergency jurisdiction may issue a shelter order regarding an endangered child but may *not* issue a dependency judgment regarding an endangered child. In parents' view, dependency judgments are not "temporary" in nature and therefore are not permitted under ORS 109.751. The juvenile court disagreed, concluding that ORS 109.751 gave it subject matter jurisdiction to adjudicate V's and M's dependency petitions. The question before us is whether the juvenile court correctly construed ORS 109.751 as giving

---

[3] DHS does argue that the juvenile court had initial-custody jurisdiction as to M, as discussed in the next section regarding the court's subject matter jurisdiction as to M.

it subject matter jurisdiction to adjudicate a dependency petition.

B.   *A Brief Primer on Juvenile Court Orders*

Given the issue on appeal, we pause to provide an extremely brief primer on how the juvenile court comes to issue shelter orders and dependency judgments.

ORS 419B.100 gives the juvenile court exclusive original jurisdiction over persons under 18 years of age under certain circumstances, including (but not limited to) when the person's "condition or circumstances are such as to endanger the welfare of the person or of others" or when the person's parents have "[a]bandoned the person." ORS 419B.100(1)(c), (1)(e)(A). Anyone may file a petition in the juvenile court alleging that a child is within the court's jurisdiction under ORS 419B.100. ORS 419B.809.

When a dependency petition is filed, the child at issue may (or may not) be taken into protective custody. *See* ORS 419B.839(2); ORS 419B.150. If the child is taken into protective custody, the juvenile court must hold a shelter hearing within 24 hours and either place the child in shelter care or otherwise make an initial disposition. ORS 419B.175; ORS 419B.183.

Regardless of whether the child is in protective custody, no later than 60 days after the filing of the dependency petition, the juvenile court must hold a hearing to decide whether the child is within its jurisdiction under ORS 419B.100, subject to extension only for good cause stated on the record. ORS 419B.305 to 419B.325.

If the juvenile court decides after the 60-day hearing that the child is within its jurisdiction under ORS 419B.100, it "shall" make the child a ward of the court. ORS 419B.328(1). The wardship "continues" until the court dismisses the petition, transfers jurisdiction to another county, or terminates the wardship, or until the child is adopted or reaches 21 years of age. ORS 419B.328(2). While the child is a ward of the court, ORS chapter 419B details what hearings the court must hold, what procedures it must follow, and what determinations it must make, until the case reaches final resolution. Potential final resolutions range

from the child's return home (and dismissal of jurisdiction) to termination of parental rights.

Shelter orders are not limited to dependency cases. *See* ORS 419B.150 (providing for when a child may be taken into protective custody). No matter why a child is taken into protective custody, the court must hold a shelter hearing within 24 hours and make an initial disposition as to shelter. ORS 419B.183; ORS 419B.175.

C.   *Construction of ORS 109.751(2)*

Having laid the necessary foundation, we turn to the task of construing the disputed statutory provision, ORS 109.751(2).[4]

We apply "our usual methodology of examining the text and context of the provision in light of any legislative history that may be appropriately considered." *State v. L. P. L. O.*, 280 Or App 292, 305, 381 P3d 846 (2016) (internal quotation marks omitted). Because the UCCJEA is a uniform act, we treat its commentary as a part of the act's legislative history. *See State of Oregon DCS v. Anderson*, 189 Or App 162, 169-70, 74 P3d 1149, *rev den*, 336 Or 92 (2003) (stating same in context of different uniform act). Given "the need to promote uniformity of the law with respect to [the UCCJEA's] subject matter among states that enact it," ORS 109.831, we also consider case law from other states as part of our analysis. *L. P. L. O.*, 280 Or App at 305-06.

Because the surrounding provisions are important context for the disputed provision, we state the full text of ORS 109.751:

"(1)   A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

_____

[4] Parents concede that the requirements for temporary emergency jurisdiction are met, so the meaning of ORS 109.751(1) is not in dispute. And it is undisputed that there is no previous child custody determination and no pending child custody proceeding in another state, so ORS 109.751(3) and (4) do not apply. Thus, the only disputed provision is ORS 109.751(2), although the other subsections provide relevant context.

"(2)  *If there is no previous child custody determination that is entitled to be enforced under ORS 109.701 to 109.834 and a child custody proceeding has not been commenced in a court of a state having jurisdiction under ORS 109.741 to 109.747*, a child custody determination made under this section remains in effect until an order is obtained from a court of a state having jurisdiction under ORS 109.741 to 109.747. If a child custody proceeding has not been or is not commenced in a court of a state having jurisdiction under ORS 109.741 to 109.747, a child custody determination made under this section becomes a final determination if the determination so provides and this state becomes the home state of the child.

"(3)  *If there is a previous child custody determination that is entitled to be enforced under ORS 109.701 to 109.834, or a child custody proceeding has been commenced in a court of a state having jurisdiction under ORS 109.741 to 109.747*, any order issued by a court of this state under this section must specify in the order a period that the court considers adequate to allow the person seeking an order to obtain an order from the state having jurisdiction under ORS 109.741 to 109.747. The order issued in this state remains in effect until an order is obtained from the other state within the period specified or the period expires.

"(4)  A court of this state that has been asked to make a child custody determination under this section, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of a state having jurisdiction under ORS 109.741 to 109.747, shall immediately communicate with the other court. A court of this state that is exercising jurisdiction under ORS 109.741 to 109.747, upon being informed that a child custody proceeding has been commenced in, or a child custody determination has been made by, a court of another state under a statute similar to this section, shall immediately communicate with the court of that state to resolve the emergency, protect the safety of the parties and the child and determine a period for the duration of the temporary order."

(Emphases added.)

On its face, ORS 109.751(2) anticipates that an Oregon court exercising temporary emergency jurisdiction will make a "child custody determination." A "child custody

determination" is a "judgment or other order" of the court "providing for the legal custody, physical custody, parenting time or visitation with respect to [the] child." ORS 109.704(3). ORS 109.751(2) provides that such a determination "remains in effect until an order is obtained from a court of a state" having initial-custody jurisdiction. In certain circumstances, the determination becomes a "final determination." ORS 109.751(2). Specifically, if the determination so provides, and Oregon becomes the child's home state, the determination becomes a final determination, even though it was issued under temporary emergency jurisdiction. *Id.*

The terms of ORS 109.751(2) are unique to that statutory provision, *i.e.*, to situations in which there is no previous child custody determination, no custody proceeding has been commenced in a state with initial-custody jurisdiction, and an Oregon court has made a custody determination while exercising temporary emergency jurisdiction. If a previous custody determination exists, or if a custody proceeding has been commenced in a state with initial-custody jurisdiction, an Oregon court exercising temporary emergency jurisdiction has authority to make only limited-duration custody determinations. ORS 109.751(3). Another UCCJEA provision regarding temporary enforcement orders imposes similar limits. *See* ORS 109.784. By contrast, ORS 109.751(2) is the *sole* provision in the entire UCCJEA that provides for a court exercising temporary jurisdiction to make a custody determination that will continue indefinitely, or even become "a final determination," if no other court steps up.

That context suggests that, although the drafters of the UCCJEA may have been primarily focused on preventing conflicting custody determinations between courts of multiple states, they also wanted to avoid situations in which, even if no other court asserted jurisdiction, a child would lose the benefit of a custody determination made by a state with temporary emergency jurisdiction. Other UCCJEA provisions reflect a similar interest in not leaving children without *any* court taking jurisdiction. *See* ORS 109.761 (providing that, if an Oregon court has initial-custody jurisdiction but decides that a court of another state is a more appropriate forum, the Oregon court "shall stay the proceedings

*upon condition that a child custody proceeding be promptly commenced in another designated state*" (emphasis added)); ORS 109.764 (providing that, if an Oregon court declines to exercise initial-custody jurisdiction due to "unjustifiable conduct" by a party, it "may fashion an appropriate remedy to ensure the safety of the child * * *, including staying the proceeding until a child custody proceeding is commenced in a court having jurisdiction under ORS 109.741 to 109.747").

The commentary to the UCCJEA is also relevant to construing ORS 109.751(2). The commentary on the provision codified at ORS 109.741 explains that, when the UCCJEA was drafted to replace a previous uniform act, the emergency-jurisdiction provision was moved to a separate section "to make it clear that the power to protect a child in crisis does not include the power to enter a permanent order for that child *except as provided by that section*." UCCJEA § 201 comment, 9IA ULA 474, 505 (2019) (emphasis added). Consistently with that statement, the commentary on the provision codified at ORS 109.751 states:

> "[A] custody determination made under the emergency jurisdiction provisions of this section is a *temporary order*. The purpose of the order is to protect the child until the State that has jurisdiction under Section 201-203 enters an order.
>
> "*Under certain circumstances, however, subsection (b) provides that an emergency custody determination may become a final custody determination*. If there is no existing custody determination, and no custody proceeding is filed in a State with jurisdiction under Sections 201-203, an emergency custody determination made under this section becomes a final determination, if it so provides, when the State that issues the order becomes the home state of the child."

UCCJEA § 204 comment, 9IA ULA 474, 519 (2019) (emphases added).

Based on text, context, and legislative history, our initial conclusion is that the juvenile court did not err in concluding that it had subject matter jurisdiction to adjudicate V's dependency petition under ORS 109.751(1), subject to the provisions of ORS 109.751(2). Parents have not identified anything in the text, context, or legislative history

that would allow the juvenile court to enter one type of child custody determination—a shelter order—but not another type—a dependency judgment. Both shelter proceedings and dependency proceedings are "child custody proceedings" as defined in ORS 109.704(4), and parents do not contend otherwise. Both shelter orders and dependency judgments are "child custody determinations" as defined in ORS 109.704(3), and parents do not contend otherwise.

When the juvenile court's subject matter jurisdiction is limited to temporary emergency jurisdiction, the court obviously is limited to issuing dependency judgments in cases that meet the requirements for temporary emergency jurisdiction; that is, the child must be present in the state and have been abandoned or subjected to or threatened with mistreatment or abuse. *See* ORS 109.751(1) (stating requirements to exercise temporary emergency jurisdiction). For example, the juvenile court could not rely on temporary emergency jurisdiction to issue a dependency judgment based on neglect. *See* UCCJEA § 204 comment, 9IA ULA 474, 519 (2019) (no temporary emergency jurisdiction based on neglect because neglect is too amorphous).

But nothing in the UCCJEA supports drawing a distinction between different types of child custody determinations in different types of child custody proceedings. To put it simply, all "child custody determinations" are treated equally under ORS 109.751(2). And, as long as the court continues to have temporary emergency jurisdiction, it may continue to make child custody determinations.

Parents rely on the UCCJEA commentary as support for their assertion that temporary emergency jurisdiction is limited to "temporary orders." That reliance is misplaced. Certainly ORS 109.751(1) grants "temporary" emergency jurisdiction. The commentary also describes ORS 109.751 as allowing a "temporary order." UCCJEA § 204 comment, 9IA ULA 474, 519 (2019). However, when no previous custody determination exists, and no custody proceeding has been commenced in another state having initial-custody jurisdiction, it is unequivocally clear under ORS 109.751(2) that an Oregon court exercising "temporary" emergency jurisdiction may make child custody determinations of indefinite

duration, which, in some cases, will become "final" determinations. The commentary expressly recognizes that provision as an *exception* to the general rule that the court may issue only a "temporary order" when exercising temporary emergency jurisdiction. *See* UCCJEA § 204 comment, 9IA ULA 474, 519 (2019). As such, custody determinations made in the exercise of "temporary" emergency jurisdiction absolutely may, in specified circumstances, remain in force indefinitely or even become "final" determinations.[5]

Thus, we are unpersuaded by parents' argument that the juvenile court exceeded its temporary emergency jurisdiction when it adjudicated V's dependency petition. Relatedly, we are unpersuaded by parents' argument that the court's custody determinations in V's dependency proceeding can never become "final determinations." That assertion is based on a misreading of ORS 109.751(2).

For simplicity's sake, we illustrate the "final determination" point by reference to a hypothetical parental custody dispute, rather than the more complicated situation of a dependency petition: A mother and child flee from Idaho to Oregon to escape the father, who is abusive to the child. The mother immediately files a custody proceeding in Oregon. There is no previous custody determination, nor has any proceeding been commenced in Idaho. The Oregon court exercises temporary emergency jurisdiction. After proper notice, it enters a custody determination in the mother's favor, which provides that it will become final if Oregon becomes the child's home state. Eight months later, while the child is still living in Oregon, the father files a custody proceeding in Idaho. At that point, the Oregon custody determination has become final, because the judgment "so provides" and because Oregon is now the child's home state.

---

[5]  Relatedly, parents argue that dependency proceedings are outside the scope of a court's "temporary" emergency jurisdiction because of their potentially "permanent" consequences, particularly termination of parental rights. However, any child custody determination has potentially "permanent" consequences if it becomes a final determination. The most severe possible outcome of a dependency proceeding may or may not be worse than the most severe possible outcome of a private custody dispute, but the drafters of the UCCJEA gave no indication that they intended to limit temporary emergency jurisdiction only to certain types of child custody determinations. Indeed, as explained, the text compels the contrary conclusion.

As relevant here, "home state" means the state in which a child lived with a parent "for at least six consecutive months immediately before the commencement of a child custody proceeding." ORS 109.704(7). In parents' view, Oregon would not have become the child's home state in the above hypothetical because the child had not lived with the mother for at least six consecutive months before the commencement of the *Oregon* child custody proceeding. But that construction is illogical, as it would defeat any application of the final sentence of ORS 109.751(2). Given the definition of "home state," Oregon could never "become" the child's home state under parents' construction. To give effect to the final sentence of ORS 109.751(2), the only plausible construction is that Oregon "becomes" the home state for purposes of *other* child custody proceedings. To refer back to the hypothetical, in the *Idaho* proceeding filed by father, the *Idaho* court would conclude that the Oregon custody determination had become final, because the judgment so provided and because Oregon had "become" the child's home state. *See* ORS 174.010 ("In the construction of a statute, * * * where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all.").

We therefore disagree with parents that the juvenile court's child custody determinations in V's and M's dependency cases can never become final determinations without a Washington court affirmatively ceding jurisdiction. We need not address, however, whether or when any particular order or judgment may become a "final determination." Until and unless that occurs, and unless a court of a state having initial-custody jurisdiction issues an order before that occurs, a child custody determination made by the juvenile court in the exercise of its temporary emergency jurisdiction "remains in effect" under ORS 109.751(2), even if it is not "final."

That leaves only one other source of information to be considered, which is existing case law, including case law from other jurisdictions. *See* ORS 109.831 ("In applying and construing ORS 109.701 to 109.834, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it.");

*L. P. L. O.*, 280 Or App at 305-06 (recognizing that, because of ORS 109.831, we consider caselaw from other states when construing UCCJEA provisions).

　　Critically, our construction of ORS 109.751(2) in this case is consistent with *L. P. L. O.*, the only Oregon case on point. In *L. P. L. O.*, the petitioner petitioned the juvenile court to take dependency jurisdiction over him. 280 Or App at 294. The juvenile court concluded that it had temporary emergency jurisdiction under ORS 109.751, *i.e.*, subject matter jurisdiction, but that the petitioner had failed to meet his burden of proof to establish dependency jurisdiction under ORS 409B.100. *Id*. at 295-96. Both issues were before us on appeal. *Id*. at 294. We held, first, that the juvenile court had subject matter jurisdiction to adjudicate the petition, because the requirements for temporary emergency jurisdiction were met, and, second, that the facts found by the juvenile court were such that it was required to take dependency jurisdiction. *Id*. at 304-11. Although the subject-matter-jurisdiction argument that we rejected in *L. P. L. O.* was not the same as the one that parents raise in this case, the fact remains that, in *L. P. L. O.*, we held that the juvenile court had subject matter jurisdiction under ORS 109.751 to adjudicate a dependency petition.

　　Very few other state courts have addressed the scope of temporary emergency jurisdiction in relation to dependency proceedings. Most of the cases that parents cite have involved situations in which there was a previous custody determination from another state or an ongoing custody proceeding in another state, such that the equivalent of ORS 109.751(3) applied, and the lower court had failed to comply with the limitations in that provision. Those cases are readily distinguishable, as ORS 109.751(3) contains durational restrictions that ORS 109.751(2) does not.[6]

---

[6] *See, e.g.*, *J. D. v. Lauderdale Cnty. Dep't of Human Res.*, 121 So 3d 381, 382, 385 (Ala Civ App 2013) (where a custody proceeding was already pending in the children's home state of Texas, an Alabama court exercising temporary emergency jurisdiction had to comply with the requirements of Alabama's equivalent of ORS 109.751(3)); *In re M. C.*, 94 P3d 1220, 1221-22, 1224-25 (Colo Ct App 2004) (where there was an existing custody order from Texas, a Colorado court exercising temporary emergency jurisdiction had to comply with the requirements of Colorado's equivalent of ORS 109.751(3)); *In re A. A.*, 51 Kan App 2d 794, 795, 808, 354 P3d 1205, 1207, 1214 (2015) (stating in *dicta* that, even if there had been an

We are aware of only two states that have actually addressed the issue that is before us in this case—Kansas and California—and those courts have split on it.

In *In re K. L. B.*, the Kansas Court of Appeals affirmed a lower court decision terminating a mother's parental rights to two children. 56 Kan App 2d 429, 444, 431 P3d 883, 894 (2018). The court concluded that the lower court did not have initial-custody jurisdiction over the children, whose home state was Kentucky, but did have temporary emergency jurisdiction. *Id.* at 440-43, 431 P3d at 892-94. In response to an argument from the mother that the lower court had exceeded its temporary emergency jurisdiction, the court noted that, under Kansas' equivalent of ORS 109.751, "how long temporary emergency jurisdiction may last" depends on whether there is a previous custody determination from another state. *Id.* at 441, 431 P3d at 892. Because there was no previous custody determination in *K. L. B.*, the scope of the lower court's authority was governed by Kansas' equivalent of ORS 109.751(2), not ORS 109.751(3), and the lower court continued to have jurisdiction through the time of termination. *Id.* at 443-44, 431 P3d at 893-94.[7]

California takes a different view. In recent years, California has taken the position that, as a *general* matter,

emergency giving rise to temporary emergency jurisdiction in Kansas, a Kansas court would have to comply with Kansas's equivalent of ORS 109.751(3), where there were previous custody orders from Mississippi); *In re Brode*, 151 NC App 690, 691, 695, 566 SE2d 858, 859, 861 (2002) (making summary statements about the UCCJEA in the context of a case in which there was an existing custody order from Texas, before mother abducted the child and took him to North Carolina); *In re NC*, 294 P3d 866, 869, 874, 876 (Wyo S Ct 2013) (where a custody proceeding was already pending in the children's home state of Texas, a Wyoming court exercising temporary emergency jurisdiction had to comply with the requirements of Wyoming's equivalent of ORS 109.751(3)).

[7] In *K. L. B.*, the lower court had at one point contacted a court in Kentucky, which "did not want a hearing or anything on the record and declined to exercise jurisdiction." 56 Kan App 2d at 431, 431 P3d at 887. However, that event does not appear to have been significant to the Kansas appellate court's disposition. In its analysis, the appellate court explained that, even if the mother was correct that Kentucky had never entered a valid order declining jurisdiction, it would not matter because, under Kansas' equivalent of ORS 109.751(2), an order entered in Kansas on the basis of temporary emergency jurisdiction "would have continued" as long as Kentucky never entered an order, and, in fact, could have become permanent. *Id.* at 443, 431 P3d at 893-94.

a California court exercising temporary emergency jurisdiction under the California UCCJEA cannot conduct dependency proceedings. For example, in *In re Aiden L.*, the court said that a California court exercising temporary emergency jurisdiction "may not address the merits of [a] dependency petition or otherwise make a final child custody determination until it properly asserts jurisdiction under the nonemergency jurisdiction provisions of the UCCJEA." 16 Cal App 5th 508, 518, 224 Cal Rptr 3d 400, 408 (2017).

Having reviewed the California cases, we find nothing to persuade us to California's view of temporary emergency jurisdiction. As a preliminary matter, we note that the California case law has shifted over time. Until 2014, it appears that California courts had only viewed dependency proceedings as beyond the scope of temporary emergency jurisdiction if there was a previous custody determination or a child custody proceeding had been commenced in another state with initial-custody jurisdiction. *See In re Gino C.*, 224 Cal App 4th 959, 966, 169 Cal Rptr 3d 193, 197-98 (2014).[8] In extending that principle to all cases, the court in *In re Gino C.* reasoned that a child custody determination does not become a "final determination" under the equivalent of ORS 109.751(2) until California becomes the "home state," and that California cannot become the "home state" unless it contacts the existing home state and gets it to decline initial-custody jurisdiction, so that must be what is necessary for a court to issue a "final" child custody determination. *Id.*, 169 Cal Rptr 3d at 197-98.

---

[8] It appears that the California line of cases originates from a 1993 decision under the uniform act that preceded the UCCJEA. *See In re Joseph D.*, 19 Cal App 4th 678, 23 Cal Rptr 2d 574 (1993). In that case, the court concluded that the lower court had erred in continuing emergency jurisdiction and proceeding with a dispositional hearing in a dependency matter where there was a previous child custody determination from Pennsylvania. *Id.* at 691-93. A decade later, another court applied the same reasoning in a UCCJEA case in which there was a previous child custody determination from Arkansas. *See In re C. T.*, 100 Cal App 4th 101, 104-05, 111-12, 121 Cal Rptr 2d 897, 901-02, 906 (2002). Another decade later, in *In re Gino C.*, the court cited *C. T.* as authority for the *general* proposition that courts cannot rely on temporary emergency jurisdiction to adjudicate dependency proceedings, seemingly regardless of whether there is a previous child custody determination from another state. 224 Cal App 4th at 965-66, 169 Cal Rptr 3d at 197-98.

We view that reasoning as flawed. Most significantly, it conflates initial-custody jurisdiction with home-state status. If a court with temporary emergency jurisdiction is not a child's home state but takes the necessary steps to obtain initial-custody jurisdiction, the result is that it *obtains initial-custody jurisdiction*, not that it becomes the home state. *See* ORS 109.741(1). The only way to "become" a child's home state is to meet the definition of "home state," which has nothing to do with other courts declining jurisdiction. *See* ORS 109.704(7). We are also unpersuaded by California's reasoning because, even if a child custody determination does not become "final" until the issuing state becomes the child's home state, it does not follow that a court exercising temporary jurisdiction cannot issue any orders or judgments in dependency proceedings, especially when such orders and judgments are permitted to have unlimited duration under ORS 109.751(2). Finally, we note that the California appellate courts have relied on state-specific legislative history regarding the California UCCJEA,[9] whereas no comparable legislative history exists in Oregon.

For all of those reasons, we are unpersuaded to adopt California's approach, which we view as contradicting the plain language, context, and legislative history of the UCCJEA and ORS 109.751(2).

In sum, the juvenile court did not err in concluding that it had subject matter jurisdiction to adjudicate V's dependency petition under ORS 109.751. Under the terms of ORS 109.751(2), the dependency judgment will continue in effect until a court with initial-custody jurisdiction issues an order—and may, if the statutory conditions are satisfied, become a final determination.

## IV. SUBJECT MATTER JURISDICTION AS TO M

The juvenile court made the same ruling on subject matter jurisdiction, for the same reasons, as to both V and M.

---

[9] *See, e.g.*, *In re Gino C.*, 224 Cal App 4th at 967, 169 Cal Rptr 3d at 198 (citing statement in California's own legislative history that "temporary emergency jurisdiction *** can ripen into continuing jurisdiction only if no other state with grounds for continuing jurisdiction can be found or, if one is found, that state declines to take jurisdiction" (emphasis omitted)).

On appeal, however, DHS raises two alternative bases to affirm that are unique to M. First, DHS argues that the law-of-the-case doctrine applies, such that parents are precluded from challenging the juvenile court's subject matter jurisdiction to enter the January 2019 judgment regarding M.[10] Second, in the alternative to its arguments about temporary emergency jurisdiction, DHS argues that the juvenile court had initial-custody jurisdiction as to M under ORS 109.741(1)(b), notwithstanding the juvenile court's assumption to the contrary.[11]

Given our disposition as to V, we need not reach DHS's alternative bases to affirm. *See Biggerstaff v. Board of County Commissioners*, 240 Or App 46, 56, 245 P3d 688 (2010) (recognizing our discretion whether to consider an alternative basis to affirm). For the same reasons that the juvenile court had subject matter jurisdiction under ORS 109.751 to issue a dependency judgment as to V, it had subject matter jurisdiction under ORS 109.751 to issue a dependency judgment as to M. That dependency judgment will continue in effect until a court with initial-custody jurisdiction issues an order—and may, if the statutory conditions are satisfied, become a final determination.

## V.   CONCLUSION

The juvenile court did not exceed its temporary emergency jurisdiction under ORS 109.751 when it issued dependency judgments as to V and M. Nothing in ORS 109.751 limited the court to issuing shelter orders. The

---

[10] The law-of-the-case doctrine precludes "parties from revisiting issues that already have been fully considered by an appellate court in the same proceeding." *Hayes Oyster Co. v. Dulcich*, 199 Or App 43, 54, 110 P3d 615, *rev den*, 339 Or 544 (2005). When mother appealed the January 2019 judgment regarding M, she argued on appeal that the juvenile court lacked subject matter jurisdiction. DHS reasons that we must necessarily have rejected those arguments, given that we affirmed the judgment, and that the law-of-the-case doctrine therefore applies. Parents make various arguments as to why the doctrine should not apply here.

[11] DHS's argument that the juvenile court has initial-custody jurisdiction as to M hinges on M not having a home state and having a significant connection to Oregon other than mere physical presence. *See* ORS 109.741(1)(b). Parents contest both points. DHS made the same argument in mother's appeal of the January 2019 judgment.

court therefore did not err in denying parents' motion to dismiss.[12]

Affirmed.

---

[12] As is evident from the opinion, we have concluded that the juvenile court was not only correct in its ruling but also correct in its reasoning as to how the Oregon UCCJEA applied under the circumstances. To the extent that DHS has made arguments on appeal that rely on a different statutory construction than the juvenile court's (or ours), we necessarily reject those arguments. DHS has defended the basis on which the juvenile court actually ruled, and, in any event, we may always affirm on the basis on which the court actually ruled, if it is legally correct.